IDA W. WHEATMAN v. HANNAH L. ANDREWS, EXECU-
TRIX, &c., OF BENAJAH D. ANDREWS, DECEASED.

Submitted July 4, 1913—Decided December 31, 1913.

1. A plea of *plene administravit* is not dilatory in character, and consequently need not be verified by an affidavit proving the truth thereof as required by section 117 of the Practice act of 1903 (repealed 1912).

2. A plea that defendant's testator had been adjudicated a bankrupt after his death by virtue of proceedings instituted in his lifetime; that the plaintiff's claim had been duly proved in the bankruptcy proceedings, and that the only assets in defendant's hands as executor were the proceeds of life insurance over the surrender value thereof, which had been paid or secured to the trustee in bankruptcy, sets up a good *prima facie* defence under section 70a of the Bankruptcy act of 1898; and matter in avoidance of the effect of that section should be averred by way of replication.

On demurrer to pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff, *Bleakly & Stockwell.*

For the defendant, *French & Richards.*

The opinion of the court was delivered by

PARKER, J. The declaration is on the common counts in *assumpsit* with bill of particulars specifying the sum of $800 cash advanced and loaned by plaintiff to defendant's testator in his lifetime. The first plea, of general issue, is not demurred to. The second is a plea of *plene administravit* (3 *Chit. Pl.* [*7th Am. ed.*] *943), following the standard form, and the only objection now urged is that it is a dilatory plea and is not accompanied by the affidavit of verification required with pleas of that character. *Practice act* 1903, § 117; *Pamph. L., p.* 570. This section was repealed by the Practice act of 1912 but was in force when the plea was filed. The answer to the objection is that the plea of *plene administravit* is not a dilatory plea but a plea in bar, and is so classed by Chitty. 1 *Chit. Pl. contents, chap.* 7, *subdivision* 1; *Id.* 526; 3 *Id.* 943; "Pleas in bar in *assumpsit*." The judgment, if the plea be sustained, is not one of abatement of the writ, as in the cases of a successful plea to the jurisdiction or plea in abatement (1 *Chit. Pl.* 480, 501), but on the contrary if a plea of *non assumpsit* and one of *plene administravit* are pleaded together and the plaintiff traverses both pleas and issue be joined and the plea of *plene administravit* be found true, the defendant has judgment generally, though the general issue is found against him. On the other hand, the plaintiff on a sole plea of *plene administravit* may confess the plea and take judgment at once of assets *quando acciderint. Wms. Ex.* 1794; *Southard* v. *Potts,* 2 *Zab.* 278, 284.

The demurrer to the second plea will be overruled. Whether a general demurrer for this cause could have prevailed in any case, or the relief should have been sought by motion to strike out, need not be decided in view of our conclusion. See *Robert* v. *Moore,* 33 *Vroom* 618, 619.

The third plea sets up that in the lifetime of the testator

a petition in involuntary bankruptcy was filed against him on February 3d, 1910; that on the 15th of that month he died; that on April 4th following there was an adjudication of bankruptcy; that plaintiff appeared in the bankruptcy proceeding and proved her claim before the referee, based on the present cause of action; and that "the only asset which has come or can come to this defendant is the proceeds over and above the surrender value thereof, of insurance policies payable to said Benajah D. Andrews, his estate or personal representative, the surrender value of which has been duly paid or secured to the trustee in bankruptcy, and which assets this defendant is entitled to hold, own and carry free from the claim of said plaintiff, and this she is ready to verify; wherefore she prays judgment if the said plaintiff ought to have or maintain his aforesaid action thereof against her."

This plea is evidently based on the Bankruptcy act, section 70, article 5, and on the general rule that property acquired by the bankrupt subsequent to the filing of the petition is not subject to the claims of pre-existing creditors. Section 70 enumerates the kinds of property of the bankrupt which pass to the trustee; and clause 5 thereunder includes:

"(5) Property which, prior to the filing of the petition, he could by any means have transferred or which might have been levied upon and sold under judicial process against him; provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representative, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise, the policy shall pass to the trustee as assets."

Now the plea says that there were such policies having a cash surrender value; that said surrender value has been as-

certained, paid and secured to the trustee in bankruptcy; and that the proceeds of the policies in excess of that surrender value are free from the claim of plaintiff, evidently because they accrued to the bankrupt or to his estate after the filing of the petition and in view of the section just quoted. Whether or not the bankrupt himself in his lifetime "paid or secured" the surrender value of the policies to the trustee, or this was done after his death, is immaterial in view of the decisions. In *Everett* v. *Judson,* 228 *U. S.* 474, the facts were that the petition in bankruptcy was filed December 17th, the bankrupt died January 4th, and the adjudication was on January 9th. The executor claimed the right under clause 5 to pay or secure to the trustee in bankruptcy the surrender value of certain life insurance and hold the policies or their proceeds for the estate; and the Supreme Court of the United States sustained this right, denying the trustee's claim that he was entitled to the entire proceeds, and holding that the date as of which the trustee takes title to the assets of the bankrupt is that of the filing of the petition, and that it is as of that date that the surrender value is to be ascertained. A similar ruling was made in *Burlingham* v. *Crouse,* 228 *U. S.* 459, and in *Andrews* v. *Partridge, Id.* 479, reversing 191 *Fed. Rep.* 325, in a suit relating to this identical estate.

It appearing by the third plea that the surrender value has been duly paid or secured to the trustee in bankruptcy, the policy itself, and naturally its proceeds in case of death, are by the express language of the act the property of the bankrupt, free from the claims of creditors participating in the distribution of his estate under the bankruptcy proceeding, and belong to the beneficiaries named in the policies or to whom they may have been lawfully assigned. In this case they appear to have been payable to the estate of the deceased and of course pass to the executor; at all events they are not in the first instance applicable to the claims of creditors, not only because of the language of clause 5, but because of the general scheme and purpose of the Bankruptcy act, in the words of the opinion in Everett *v.* Judson, "to fix

the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed."

It is argued that the third plea is faulty in failing to state that plaintiff is "participating in the distribution" of the bankrupt estate; but this is plainly covered by the statement that plaintiff appeared and proved her claim before the referee. Proof of the claim entitles it to allowance unless objection is made (section 57c) and a dividend follows as of course. We think it is for plaintiff to set up by way of avoidance any facts showing that the claim had not taken the usual course, and that the statement that the claim was proved *prima facie* imports participation in the distribution of the estate.

It is further objected that the plea does not aver a discharge of the bankrupt or of his estate. By section 8 the death or insanity of a bankrupt does not abate the proceeding but it is to be conducted and concluded in the same manner as far as possible as though he had not died or become insane. It is said that under the law of 1898 a discharge will be granted notwithstanding the death of the bankrupt. *Coll. Bank (4th ed.)* 109. The proceedings will not be abated. *In re Hicks,* 107 *Fed. Rep.* 910; and where bankrupt was insane and could not be examined, a discharge was nevertheless ordered and held a matter of right. *In re Miller,* 133 *Id.* 1017. But if the statutory time elapse without an application for discharge, the right is irrevocably gone. *Kuntz* v. *Young,* 131 *Id.* 719; *In re Bramlett,* 161 *Id.* 588; *In re Pullian,* 171 *Id.* 595; *In re Wagner,* 139 *Id.* 87; *In re Levenstein,* 180 *Id.* 957. Failure to apply for a discharge in proper time, and the approval of the record without it by the court, amount to a judgment by default that the bankrupt is not entitled to a discharge. *In re Elby,* 157 *Id.* 935. Naturally if a discharge is actually or in contemplation of law refused, the debts are not barred and creditors may go on and press them to judgment, execution, &c.

Assuming, then, that the practice in cases where the bankrupt has died is to have the personal representative represent the deceased in the proceeding and apply for a discharge,

and that it is his duty to do so, and that failure so to apply within statutory time subjects the estate to the same liability as that existing in the case of a living bankrupt where a discharge is refused, and assuming further that in such case the policy and its proceeds remain the property of the personal representative and do not pass to the trustee as after acquired property in case of a revocation of discharge (sections 15, 64c), we consider that the failure to secure such discharge is likewise matter in avoidance to be set up in a replication, and that defendant is not required to show by his plea that he has not forfeited the immunity conferred by section 70a upon the insurance over and above its surrender value, and which, as we have said, should normally extend to the proceeds of such insurance when collected.

The situation is similar to that existing in suits based upon a statute. If there be an exception in the body of the enacting clause, the party relying on the general clause must in such case negative the exception in his pleading; but if the exception be in some other detached clause it need not be negatived or noticed, and the opposite party must set up the exception. 1 *Chit. Pl.* 223; *Farwell* v. *Smith,* 1 *Harr.* 133, 135; *Clark Thread Co.* v. *Freeholders,* 25 *Vroom* 265; *Plainfield* v. *Watson,* 28 *Id.* 525; *Vandegrift* v. *Meihle,* 37 *Id.* 92; *Conner* v. *Fogg,* 46 *Id.* 245. In the case at bar the statute is relied on in the plea as an exemption, but the rule should be the same. The exemption is a general one, and if by reason of something covered by another section it is forfeited, it is for the party claiming the forfeiture to plead the facts creating it.

The third plea will therefore be sustained and the demurrer to it overruled.

The fourth plea sets up by way of inducement the same facts as the third, and proceeds to assert that if Andrews had lived, he would have been entitled to a discharge of his debts including that in suit, and that defendant is entitled to the same immunity that the testator would have secured if he had lived. This plea is bad as stating a conclusion of law and as to it the demurrer is sustained; but as the third plea covers

substantially the same ground, the plaintiff is not in a position to enter judgment other than that sustaining the demurrer to the fourth plea.

The demurrer to the second and third pleas will be overruled, without prejudice to an application for leave to reply thereto. The costs to abide the event of the suit.