64 N.J. Super. 405 (1960)
166 A.2d 173
ADVANCE PIECE DYE WORKS, INC., PLAINTIFF-APPELLANT,
v.
THE TRAVELERS INDEMNITY COMPANY AND SUN INSURANCE COMPANY OF NEW YORK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1960.
Decided December 8, 1960.
*406 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Harold D. Feuerstein argued the cause for appellant (Mr. Jack J. Terkowitz, attorney).
Mr. James A. Major argued the cause for respondent The Travelers Indemnity Company (Mr. James I. Toscano, attorney).
*407 Mr. George Winne argued the cause for respondent Sun Insurance Company of New York.
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff, a processor of textiles belonging to others, sued Travelers Indemnity Company (Travelers) and Sun Insurance Company of New York (Sun) upon their respective policies for the loss of certain customers' goods.
At the end of the plaintiff's case, the trial court ruled that plaintiff had not shown a loss within the coverage of the policy of either defendant, and entered judgment in their favor. Plaintiff appeals.
The Traveler's policy insured against "Employee Dishonesty," as therein defined. The Sun policy provided:
"5. THIS POLICY INSURES: 
EXCEPT AS HEREINAFTER PROVIDED: 
(A) AGAINST ALL RISKS OF PHYSICAL LOSS OR DAMAGE FROM ANY EXTERNAL CAUSE;
* * * * * * * *
"7. THIS POLICY DOES NOT INSURE:
* * * * * * * *
(C) AGAINST MYSTERIOUS DISAPPEARANCE OR INVENTORY SHORTAGES;
(D) THEFT, CONVERSION OR OTHER ACTS OR OMISSIONS OF A DISHONEST CHARACTER ON THE PART OF THE ASSURED OR HIS OR THEIR EMPLOYEES; * * *."
After plaintiff had introduced certain evidence, the judge suggested that plaintiff make an offer of its proposed additional proof "to set up what its witnesses would show," reserving the right to defendants (if the trial court found the offered proof enough to establish a prima facie case) to cross-examine plaintiff's witnesses and to introduce evidence on their own behalf. The parties agreed to that suggestion, and plaintiff's attorney then said:
"Pursuant to the statement of the court that counsel for the interested parties attempt to agree on plaintiff's proof as it would *408 be offered if the testimony were continued, the following is plaintiff's proffer of its proof as to the liability in addition to the testimony already received. * * *"
Then followed the offer of proof which, together with the testimony introduced before the offer, included the following facts which we have selected as pertinent to this appeal.
Plaintiff was in the business of dyeing and finishing textiles for various companies, in a two-story building in Rutherford. This building contained approximately 12 windows on each floor, not equipped with burglar alarms. There were a number of entrance doors into the building which also were not equipped with burglar alarms. More than three-fourths of the second floor was a storage room, where merchandise of customers was kept after it had been processed, awaiting the instructions of the customers. The balance of the second floor contained an employees' dressing room, showers, lockers, lavatories and "a little lunch room and what we call a sewing room."
Independent truckers brought the "greige" goods to a large loading platform, from which there was an entrance to the first floor and also an outside staircase leading to the second floor. At the top of the outside staircase there was a door to the second floor which was open during working hours but which was supposed to be locked at other times.
When the processing of the goods was completed, the goods were packed into cartons, and marked with the customer's name and sealed with gummed paper, on the first floor. Each carton was from 43 inches to 50 inches high and from 4 to 5 feet wide, and contained a number of separate pieces of goods, each on a separate roll. The cartons weighed from 300 to 600 pounds each. They were usually moved from the first floor to the second by "one of the fellows from shipping * * * [who] puts them on a hand truck and wheels it over to the elevator shaft and takes them up to the second floor on the elevator * * * and wheels them over to an island."
*409 When instructions were received to ship the cartons, they were brought down in the same fashion and, in due course, placed on the loading platform. If instructions came to ship part of a carton, the carton was brought to the first floor where the desired rolls were removed, after which the carton was resealed and returned to the second floor storage room. No cartons were unpacked in the storage room.
Among plaintiff's customers were United Textile Company, Leno Elastic Web Company, Inc., and Beauknit Mills, Inc., and finished goods belonging to them were stored on the second floor. In January 1958, when United Textile Company ordered plaintiff to deliver its merchandise, it was discovered that not only its goods but those of the other two as well were missing, a total of 17 cartons, having an alleged value of approximately $20,000. Plaintiff immediately investigated, but the only fact which it learned was that in 1957 one of its employees had discovered three or four empty cartons in the storage room, with broken tapes indicating that they had held finished goods, but he had not reported his discovery. Plaintiff reported the loss to the Rutherford police in February 1958 as a larceny.
There was no work in the storage room at night. The plant was closed on Saturdays and Sundays, but there was a maintenance crew on the premises. In addition there was "a boilerman, also referred to as the fireman, who also acts as a watchman in it." The "boilerman" made his rounds from 10:45 P.M. until 5:45 A.M., and hourly he punched "American District Telegraph" stations on the first and second floors. There were no records of punches being omitted at the A.D.T. office in Paterson, N.J.
The first shift at the plant started at 7 A.M., although in some sections of the plant plaintiff had "24 hour work periods"; the shipping department "more than likely was 10 hours"; work in the storage room was usually from "7:30 in the morning until 5 at night, perhaps 6"; "certain of the other departments about 10 hours a day, office staff 8 in the morning until 5 or 5:30 at night."
*410 In ruling upon defendants' motions for judgment, the court delivered an oral opinion in which it said:
"Viewing the proof in the light most favorable to the plaintiff and indulging all legitimate inferences therefrom, the circumstantial evidence reasonably supports a conclusion that the goods were stolen. That is to say, such a deduction could be supported by logical circumstantial proof in a reasonable sense."
However, the court ruled that plaintiff had not produced, or offered, any proof that the loss was due to employee dishonesty within the coverage of the Traveler's policy, and therefore granted Traveler's motion for judgment of involuntary dismissal. Plaintiff admits that it did not produce or offer any such proof, but, for reasons which shall hereafter be discussed, argues that nevertheless the judgment of involuntary dismissal in favor of Travelers should not have been granted until Sun had rested.
As to Sun, the court held that:
"The plaintiff concedes that its theory of theft is as consistent with employee dishonesty as it is with the absence of employee dishonesty. This being so, why should the defendant be required to prove affirmatively as a defense what the plaintiff itself finds it is impossible to set up as a claim, or stated differently, if the plaintiff is unable to prove what the ultimate cause of the loss was, why should the defendant be compelled to prove it?

* * * * * * * *
In the particular circumstances of this case a showing of theft per se is not enough. The proximate cause of the theft is an additional link of critical proof so that the legal defect in the plaintiff's position appears to be that its evidence does not serve to state a clear allegation of liability.
With this element of proof missing from the case, I believe that the plaintiff's judicial authorities do not apply to fasten upon defendant Sun the obligation to come forward with proof in avoidance of liability.
So, for these reasons, the motion by the defendant Sun Insurance Company of New York for judgment is granted."
In this the court erred. As we have said, the policy of the Sun insured "except as hereinafter provided, against all risks of physical loss or damage from any external *411 cause." (Sun argued that "external cause" means something which happens off the premises or, at least, is set in motion by some one or something that comes from without. The trial judge properly rejected this contention. It is patently devoid of merit.) Since the court had found that plaintiff's proof "reasonably supports the conclusion that the goods were stolen," it should have held that plaintiff had established a loss which was prima facie within the coverage of Sun's policy. The judge suggested that the cartons might have been "missing because the plaintiff misdirected them in shipment," but that also would have been covered by the Sun policy. It then became Sun's burden to prove its assertion that the loss fell within the exceptions of the policy, i.e., that it was a mysterious disappearance, or that it was due to employee dishonesty. Morie v. N.J. Manufacturers Indemnity Insurance Co., 48 N.J. Super. 70, 75-77 (App. Div. 1957).
Sun cites two New Jersey cases in support of the action taken by the trial court, but neither contains language similar to that in the Sun policy. In those cases, Brindley v. Firemen's Insurance Company of Newark, 35 N.J. Super. 1 (App. Div. 1955) and Trad Television Corporation v. Hartford Accident & Indemnity Co., 35 N.J. Super. 36 (App. Div. 1955), certif. denied 19 N.J. 330 (1955), the risk assumed was limited by the very language which gave the coverage. For example, in Trad the coverage was for "all loss of money * * * while being conveyed by a messenger," and the court properly held that it was the plaintiff's burden to prove that the money was lost while being "conveyed by a messenger." Such clauses are not exclusions from liability but rather conditions or provisos of liability. In Bosshardt v. Commercial Casualty Insurance Co., 124 N.J.L. 54, 56 (E. & A. 1939), the court said:
"The situation, in a case of this kind, may be likened to that where the suit is on a statute. If the enacting clause contains an exception or a proviso the pleading must allege and the proof show the facts to be outside the proviso and within the general clause, *412 but if the exception or proviso be elsewhere than in the enacting clause that is something to be set up in an answer or plea. Compare Wheatman v. Andrews, 85 N.J.L. 107, 112, and authorities there cited.
Now here the provisions of the exclusion part of the paragraph in question stand as an entirely separate provision apart from the contract definition of those included within the meaning of the unqualified word `Assured.' Applying the rule mentioned to the issue before us, it was enough for the plaintiff to show facts which would make the insurance company answerable for the action of McNamee within the meaning of the enacting clause and if it could be shown that McNamee was within that class of persons excluded by subsequent language of the contract, it was the defendant's burden to prove that he was within that exception."
In Jewelers Mutual Insurance Co. v. Balogh, 272 F.2d 889 (5 Cir. 1959), the policy insured jewelry against "all risks" but excepted mysterious disappearance. The court held, in language apposite here, at pages 891-892:
"Because no one actually saw the jewelry taken and there were no telltale marks of forcible appropriation, Jewelers Mutual denied liability on the sole and express ground that the loss was not covered because it was within the exclusion which reads:
`5(m) Unexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory. * * *.'
The District Court held that since a loss was positively established, the nature of this policy cast the burden on the insurer, not the assured, to bring it within the exception, and this Jewelers Mutual had failed to do. We agree.
Julien [Balogh] was not content merely to establish custody and loss. The evidence offered went further and injected a touch of video romance which suggested at least a likely specific event to account for the missing jewelry. On Saturday afternoon, June 23, a man wearing a wool suit and a sweater  clothing hardly indigenous to this resort area for that season  `remained in the store browsing for about 20-30 minutes, and on at least one occasion was observed looking at merchandise on shelves in the vicinity of the safe.' On Tuesday, the day following discovery of the loss and its immediate report to the local police, these witnesses examined the `mug shots' of known jewel thieves and identified that of one of them described by the insurer's loss investigator as a picture of Harry Sitamore, an internationally known jewel thief. Subsequently one of these witnesses was asked to (and did) identify this same person while he was in the hallway of the local state courthouse.
*413 While apparently crediting most of this testimony, the court did not go the next step and find that Harry (the sweater man) stole the jewels. He reasoned that the assured was not required affirmatively to establish this, and if there were deficiencies in the proof of mysterious, unexplained disappearance, the insurer bore the consequences of non-persuasion. Considering this policy and its manifest purpose, we regard this approach as correct. It was, as its plain words of broad scope championed, comprehensive insurance against all risks:
`5. This policy insures against all risks of loss or damage to the above-described property arising from any cause whatsoever except:.'
Then followed exceptions which exhausted the first thirteen letters of the alphabet with some having further numbered or lettered subdivisions covering a wide range of occurrences from atomic fission to theft from unscheduled display windows.
If the insurer's contention is sound, then as a condition precedent to liability, the assured would have to establish by a preponderance the negative of each of these manifold exceptions. Were he required to exhaust the gamut of these provisions what had been purchased and sold as all risks insurance would turn out to be something else. Instead of the policy affording coverage against all causes of damage except those specifically excluded, it would amount only to a named perils cover since the assured to negative the exception would have to establish for this case an actual theft or some other such event not specifically excluded.
There was a loss, and it was established by positive evidence. The assured did not have to go further to demonstrate that such loss was not caused by one of the excepted conditions. To escape the broad undertaking of this comprehensive cover, the insurer had the burden of establishing that. Chase Rand Corp. v. Central Ins. Co., D.C.S.D.N.Y. 1945, 63 F. Supp. 626, affirmed 2 Cir., 152 F.2d 963; Agricultural Ins. Co. v. A. Rothblum, Inc., 1933, 147 Misc. 865, 265 N.Y.S. 7; 29 Am. Jur., Insurance § 1444 (1940)."
Although the Balogh case dealt only with the defense of mysterious disappearance, what was said in that case applies as well to the defense raised here that the loss was due to employee dishonesty.
For the reasons stated the judgment in favor of Sun is reversed and the case is remanded for a new trial against it.
The plaintiff admits that at "the end of the whole case, its action against Travelers could not be sustained and the trial court would [be] justified in dismissing it" if no more evidence than is presently before the court appeared to implicate *414 Travelers. However, plaintiff contends (and, we conclude, rightly) that since its case against Sun must be reinstated, the action against Travelers should be as well. To put it another way, plaintiff argues that, in a case such as this, when a plaintiff proves a prima facie case against one of two defendants, one or the other of whom is liable to it, the motion of the other defendant for judgment of involuntary dismissal at the end of plaintiff's case should not be granted if his liability to plaintiff may be proved by the defendant held in, in the course of the latter's presentation of his defense. As plaintiff says:
"As indicated, supra, the plaintiff found itself in the position of having two policies of insurance with two different insurance companies. The Sun's policy contained an exception for losses due to infidelity or dishonesty of employees, and the Travelers covered that particular hazard. It is therefore possible, if the action of the trial court is sustained as to the Travelers policy, that the suit against the Travelers be dismissed because of plaintiff's inability to produce the necessary facts of employees' theft and yet, the Sun Insurance Company of New York, if the trial were completed as to it, could escape liability by showing facts either on its case or in cross examination of plaintiff's witnesses proving that the loss was due to employees' infidelity or dishonesty. This result would certainly be unjust and should be avoided, if possible."
No defendant in a civil action has an absolute right to a dismissal with prejudice at the end of plaintiff's case. R.R. 4:42-2(b) provides (emphasis added):
"After the plaintiff has completed the presentation of his evidence * * * the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action * * * on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury, the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. * * * Nonsuits are superseded."
The rule, therefore, plainly gives a trial court the discretion to "decline to render any judgment until the close of all the evidence." Indeed, under this rule, just as under *415 R.R. 4:51-1, the court may decline to enter any judgment at all in favor of defendant and may order a dismissal without prejudice instead, if that be necessary to avoid injustice. Holloway v. DeCrescenzo, 8 N.J. Super. 24, 27 (App. Div. 1950).
We are confident that, had the trial judge decided to deny Sun's motion for involuntary dismissal, he would have declined to render any judgment in favor of Travelers until Sun had rested, or, at least, he would have dismissed as to Travelers without prejudice.
Prior to our new rules, a nonsuit, even though involuntary and at the end of plaintiff's presentation of all his evidence, did not bar the institution of a new action by plaintiff. Christiansen v. Christiansen, 46 N.J. Super. 101, 109 (App. Div. 1957), certif. denied 25 N.J. 56 (1957); Standard Baking Company v. Hi-Grade Coal & Fuel Co., 115 N.J.L. 265 (Sup. Ct. 1935); cf. Ross v. C.D. Mallory Corp., 132 N.J.L. 1 (Sup. Ct. 1944). A judgment of involuntary dismissal under R.R. 4:42-2(b), or in favor of defendant under R.R. 4:51-1, at the end of plaintiff's case, does bar a new action. Holloway v. DeCrescenzo, supra. Yet, even though a nonsuit under the old practice did not have the lethal effect of today's involuntary dismissal, trial judges frequently denied motions for nonsuits in order to see whether defendant's own proofs would supply the deficiencies in plaintiff's case. When they did, the error, if any, in denying the nonsuit was "cured" where such proofs were afterwards supplied by the defendant during the progress of the trial. Van Cott v. North Jersey Street R.R. Co., 72 N.J.L. 229, 231 (E. & A. 1905). A fortiori, trial courts were even more loath to grant directed verdicts than they were to nonsuit, and, as we have said, that is still the attitude of trial courts toward the entry of final judgments where the merits have not been tried, or an injustice will be done. Carlo v. Okonite-Callender Cable Co., 2 N.J. Super. 122 (App. Div. 1949), affirmed 3 N.J. 253 (1949); Ross v. C.D. Mallory Corp., supra.
*416 We hold that the case at bar is such a case. Sun asserts that plaintiff's loss was caused by its dishonest employees. If Sun proves that, Travelers will be liable. It is obvious, therefore, that now that the case against Sun is being remanded for a full trial, justice demands that the case against Travelers be retried with it. Cf. Bray v. Gross, 16 N.J. 382 (1954). As the court said in Greenberg v. Stanley, 30 N.J. 485, 504 (1959), it is:
"* * * the well settled discretionary power of an appellate court in this State to order a reversal as to all or less than all defendants where harmful error has been committed against less than all, dependent on fundamental justice under the peculiar facts and circumstances of the case. Ferry v. Settle, 6 N.J. 262 (1951). Speaking broadly, there has been no hesitation to utilize the power in the interests of fairness in many varied types of situations where the reversible error found affected less than all of the parties involved or all of the affected parties had not appealed or some like circumstance existed, but in which it would be unjust to some party to allow judgments to stand in favor of or against the non-affected or non-appealing parties. E.g., Ferry v. Settle, supra, (6 N.J. 262); Potter v. Hill, 43 N.J. Super. 361 (App. Div. 1957); Tedeschi v. Silver Rod-Paterson, Inc., 15 N.J. Super. 322 (App. Div. 1951); Marzotta v. Gay Garment Co., 11 N.J. Super. 368 (App. Div. 1951), affirmed 7 N.J. 116 (1951); Roberts v. Saunders, 118 N.J.L. 548 (E. & A. 1937) * * *"
See also Drotar v. Pennsylvania R.R. Co., 120 N.J.L. 199 (Sup. Ct. 1938), affirmed o.b. 123 N.J.L. 201 (E. & A. 1939).
The judgment in favor of each defendant is therefore reversed. Plaintiff may have its costs as against Sun on this appeal, but no costs against Travelers.