[Civ. No. 27641.   Second Dist., Div. Three.   Mar. 30, 1965.]

HENRY MEYER et al., Plaintiffs and Appellants, v. PACIFIC EMPLOYERS INSURANCE COMPANY, Defendant and Respondent.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Cantillon & Cantillon and R. Michael Cantillon for Plaintiffs and Appellants.

Wise, Kilpatrick & Clayton and Sterling S. Clayton for Defendant and Respondent.

NOURSE, J. pro tem.*—The plaintiffs by their complaint in this action sought a judgment declaring their rights and the liabilities of the respondent under a policy of liability insurance issued by respondent to M. R. Peck and Earl P. Kent, Jr., doing business as M. R. Peck & Son, a copartnership, and each plaintiff sought judgment against respondent

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

for the amount of the judgment obtained by him or her against M. R. Peck and Earl P. Kent, Jr., in an action in the municipal court. The facts are not in dispute.

The partnership drilled a water well on property adjacent to that of plaintiffs. In so doing they caused the ground to vibrate and these vibrations resulted in damage to the respective buildings of the plaintiffs. Plaintiffs brought suit in the municipal court against the partnership and the individual partners (the action was dismissed as against all defendants except M. R. Peck and Earl P. Kent, Jr.). In the complaint filed in the municipal court each plaintiff alleged two causes of action, namely, "That the defendants so negligently, wantonly, recklessly, and unlawfully performed some or all of the drilling operations at said site that, to the defendants' knowledge, dangerous vibrations were sent into the earth; that these vibrations extended to, throughout and beyond the real property on which plaintiffs' residence and real-property improvements are situate; that thereby damage was caused to and sustained by said residence and improvements, as particularized below." By the second cause of action each plaintiff alleged: "That while drilling at the said site, as aforesaid, the defendants discharged certain vibrations into the earth, which vibrations went forth directly and invaded plaintiffs' real property and assailed their proprietary interest to and in said land and the improvements thereon; that directly thereby and because thereof said realty and improvements were damaged. . . ."[1]

The municipal court found that all of the allegations of the paragraph quoted above from the first cause of action were untrue and all of the allegations which we have quoted from the second cause of action were true. In its conclusions of law the court found that the defendants "intentionally caused an indirect trespass or trespasses into the various freeholds respectively owned by the plaintiffs, who in consequence were damaged by said trespass or trespasses. . . " It rendered judgment against M. R. Peck and Earl P. Kent, Jr., for the amounts of said damages.

The judgment was not paid. Demand for payment was made on respondent and refused and the present action brought. In addition to the judgment roll in the municipal court action the only evidence received in the present action

---

[1]Defendant was tendered the defense of this action but declined to defend on the ground that the facts alleged in the complaint did not constitute a risk covered by the policy.

was the policy of insurance sued upon and the deposition of Peck who testified, in substance, that nothing out of the ordinary occurred in either the drilling operation or in putting in the casing; that in his opinion the vibrations set in motion by the drilling operation were not sufficient to cause damage to the improvements on the plaintiffs' properties; that one of the plaintiffs in the municipal court told him that some cracks had appeared in her house.

In the policy sued upon the business of the partnership was stated to be "Waterwell Driller." The policy named as insured: "M. R. PECK AND EARL P. KENT, JR., doing business as M. R. PECK & SON" and the word "Insured" is defined to include any partner but only with respect to his liability as such. In the policy the insuring agreement insofar as pertinent reads: "To PAY ON BEHALF of the insured all sums which the insured shall become legally obligated to pay . . . as damages because of: . . . COVERAGE B—Injury to or destruction of property, . . . arising out of such of the following divisions of coverage as are shown as 'Included' in the Schedule of Coverages . . . Division 3—Other than Automobile or Products." (Division 3 is included in the schedule of coverages.) By that part of the policy denominated "EXCLUSIONS" it is provided: "This Policy does not apply:

"(4) under Coverage B: . . .

"Divisions 2 and 3: unless caused by accident."

By a rider attached, coverage of the liability of Peck and Kent arising out of their activities other than in the conduct of the business of the partnership is provided for. This rider by its express terms is made inapplicable to liability arising from activities of Peck and Kent in the conduct of the business of the partnership. The exclusions and conditions set forth in the rider are different from those contained in the policy. The exclusion in the policy which we have quoted above is omitted from the rider which, however, excludes "injury, . . . or destruction caused intentionally by or at the direction of the insured."

The court below found that the acts which gave rise to the municipal court lawsuit and judgment rendered therein were not accidental in nature; "That each and every act or activity giving rise to the Municipal Court cause of action, and judgment therein rendered, was caused intentionally by . . . the insured . . ."; that the terms of the policy excluded coverage for damage to property "unless caused by accident" and further found that the policy excluded coverage of any

damage or destruction "caused intentionally or at the direction of the insured." As a conclusion of law the court found that the policy issued by respondent did not provide coverage for the acts or activities which gave rise to the municipal court action and the judgment rendered therein.

It is undisputed that the trespass and damage to plaintiffs' property occurred in the conduct of the business of the partnership, the named assured in the policy. Therefore, the trial court's finding that the policy excluded from coverage any injury or destruction caused intentionally is clearly erroneous as that exclusion is not contained in the policy but in the rider and the coverage of the rider, as we have said, by its express terms is made inapplicable to liability arising from the activities of Peck and Kent in the conduct of the business of the partnership.

The case here, therefore, hinges upon the question whether the court's findings that the damage covered by the municipal court judgment was not accidental but was intentional is a correct interpretation of the policy and the effect of the judgment of the municipal court. In Webster's New International Dictionary the word "accident" is defined as "An event that takes place without one's foresight or expectation; . . ." In *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.,* 51 Cal.2d 558, 563, 564 [334 P.2d 881], the following definition is given: " 'Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or *consequence* from either a known or an unknown cause.' " (Italics added.)[2]

---

[2] In many cases it has been stated that if the happening is unexpected by and without the design *of the person* damaged or injured the occurrence is accidental within the meaning of the policy before the court in those cases. (*Ritchie* v. *Anchor Casualty Co.* (1955) 135 Cal.App.2d 245, at p. 253 [286 P.2d 1000, at p. 1005]; *Richards* v. *Travelers Ins. Co.* (1891) 89 Cal. 170 [26 P. 762, 23 Am.St.Rep. 455]; *Price* v. *Occidental Life Ins. Co.* (1915) 169 Cal. 800 [147 P. 1175]; *Rock* v. *Travelers' Ins. Co.* (1916) 172 Cal. 462 [156 P. 1029, L.R.A. 1916E 1196]; *Horton* v. *Travelers Ins. Co.* (1920) 45 Cal.App. 462 [187 P. 1070]; *Ogilvie* v. *Aetna Life Ins. Co.* (1922) 189 Cal. 406 [209 P. 26, 26 A.L.R. 116]; *Moore* v. *Fidelity & Casualty Co.* (1928) 203 Cal. 465 [265 P. 207, 56 A.L.R. 860]; *Zuckerman* v. *Underwriters at Lloyd's, London* (1954) 42 Cal.2d 460 [267 P.2d 777]; *Moore* v. *Fidelity & Cas. Co.* (1956) 140 Cal.App.2d Supp. 967 [295 P.2d 154]; *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co., supra,* (1959) 51 Cal.2d 558 [334 P.2d 881]; *Cametal Corp.* v. *National Auto. & Cas. Ins. Co.* (1961) 189 Cal.App.2d Supp. 831 [11 Cal.Rptr. 280].) It seems to us, however, that under the policy here that a damage to property that was caused intentionally, that is, designedly, by the insured would not be within the coverage of the policy even though the occurrence which caused such damage was totally unexpected and undesigned by the owner of the property. For example, if,

We approach the question as to whether damage to plaintiffs' property was accidental from the standpoint as to whether it was unexpected by the insured. Respondent asserts that the finding of the municipal court that the trespass was intentional conclusively establishes that the damage resulting therefrom was not accidental. The municipal court did not find that the damage was intentional and that issue was not before it. ■ That court having found that the trespass was intentional the liability of the defendant (there) was established even though the consequences of the trespass were unintentional and unforeseeable. (*Herzog* v. *Grosso,* 41 Cal. 2d 219, 225 [259 P.2d 429]; *Hawthorne* v. *Siegel,* 88 Cal. 159, 163 [25 P. 1114, 22 Am.St.Rep. 291]; Civ. Code, § 3333.)

■ The trial court in its memorandum opinion relied, and respondent here relies, upon the presumption set forth in section 1963, subdivision 3 of the Code of Civil Procedure, ''That a person intends the ordinary consequence of his voluntary act;'' as evidence that the consequences of the insured's trespass on plaintiffs' property were intentional, and, therefore, not accidental.[3]

While this presumption is evidence to establish liability where intent is a necessary element of the crime or wrong it has no bearing on the question of whether the consequences of an intentional act were unexpected and, therefore, accidental within the meaning of a contract of insurance. Here, intent to trespass was an essential element of the cause of action upon which the municipal court judgment is based (*Gallin* v. *Poulou,* 140 Cal.App.2d 638, 645 [295 P.2d 958]), and the presumption was, in the municipal court action, evidence to uphold the finding of intent to trespass. ■ Intent to cause damage was not, however, an element of the tort and, as we have pointed out, the trespasser was liable for such damage as he caused even though that damage was not intended or foreseen by him.

here, Peck and Kent had not only intentionally trespassed on plaintiffs' property but had by design destroyed a crop or improvement thereon it could not be held that they could assert that the damage was accidental and claim indemnity from their insurer in the amount paid by them to satisfy a judgment obtained by the property owner nor could the property owner enforce that judgment against the insurer as his rights under the policy are no greater than those of the person indemnified under it. (*Valladao* v. *Firemen's Fund Indem. Co.,* 13 Cal.2d 322, 328 [89 P.2d 643].)

[3]The trial court here did not find that the consequence that is the damage to plaintiffs' property was intentional but only that the acts and activities ''giving rise to the Municipal Court cause of action, and judgment therein rendered'' were intentional.

If we were to uphold respondent's contention that the presumption declared by section 1963, subdivision 3 of the Code of Civil Procedure, constituted evidence that the consequence of an intended act was an intentional one rather than an accidental one within the meaning of a policy of insurance, there would be many occurrences which the parties intended to insure against that could not be held accidental in character. An ordinary consequence of driving an automobile without the exercise of ordinary care or an intentional violation of a statute (speed in excess of the maximum speed limit), is injury to the person or property of the driver or a third person. Certainly no one would contend that an injury occasioned by negligent or even reckless driving was not accidental within the meaning of a policy of accident insurance or the double indemnity provisions of a policy of life insurance. Further, if by applying the presumption, an injury caused by an intentional act of an insured, other than one designed to cause injury, is to be found one intentionally caused, then, under section 533 of the Insurance Code[4] there could be no valid coverage of the driver's liability to a guest which is limited under section 17158 of the Vehicle Code to injuries caused by his willful conduct. (Cf. *Sheehan* v. *Goriansky*, 321 Mass. 200 [72 N.E.2d 538, 173 A.L.R. 497].)

The fact that an act which causes an injury is intentional does not take the consequence of that act outside the coverage of a policy which excludes damage unless caused by accident for if the consequence that is the damage or injury is not intentional and is unexpected it is accidental in character. (*Ritchie* v. *Anchor Casualty Co., supra*, 135 Cal.App.2d 245, 252-254.)

There was no evidence that the well drillers intended or expected the vibrations which their operation set in motion would cause damage to plaintiffs' property. In fact, the evidence is to the contrary.[5]

A policy of insurance should not be so interpreted as

[4] "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

[5] Respondent contends that the testimony given by Peck that he received a complaint from one of the plaintiffs that cracks had appeared in her house is evidence from which the trial court could have found as a fact that the damage was expected and therefore not accidental. The testimony of Peck, however, does not show whether this complaint was made before all of the damage accrued or after it accrued. The insuring clause of the policy was broad enough to include any damage to property for which the insured might be liable whether accidental or not, other than

to remove from the coverage of the policy a risk against which the circumstances under which and the purposes for which the policy was written indicate the insured intended to protect himself, unless such an interpretation is compelled by the express and unambiguous language of the policy.

■ In the present case the policy names the business of the insured as that of "Waterwell Driller." The insured knew and presumptively the insurer knew that in the drilling of water wells vibrations are set up in the surrounding soil and both parties knew that there was a risk that it was possible that such vibrations might cause damage to others. Certainly this risk was one clearly within the contemplation of the parties and the fact that the vibrations were intentionally caused and that they might possibly cause damage did not make the damage, if it occurred, intentional damage or an expected and therefore nonaccidental consequence of the insured's operation of its business.

We hold under the undisputed facts here that the loss established by the judgment in the municipal court was one caused by accident and not one intentionally caused and was, therefore, a risk included in the coverage provided by the insuring agreement.

The judgment is reversed with directions to the trial court to enter judgment for plaintiffs as prayed for in their complaint.

Shinn, P. J., and Kaus, J., concurred.

---

willful or intentional injury which, of course, could not be insured against. (Ins. Code, § 533.) The clause of the policy upon which the respondent here relies and upon which the court below relies was an exception to the broad coverage of the insuring clause and the burden was upon the respondent to show that this notice of damage to the property of one of the plaintiffs was given before the damage for which judgment was rendered had occurred. This, respondent failed to do. (*Bebbington* v. *California Western etc. Ins. Co.*, 30 Cal.2d 157 [180 P.2d 673, 1 A.L.R.2d 361]; *Dennis* v. *Union Mut. Life Ins. Co.*, 84 Cal. 570, 572 [24 P. 120]; *Jewellers Mutual Ins. Co.* v. *Bologh* (5th Cir. 1959) 272 F.2d 889; *Advance Piece Dye Works, Inc.* v. *Travelers Indemnity Co.*, 64 N.J. Super. 405 [166 A.2d 173, 88 A.L.R.2d 1114]; Notes 88 A.L.R. 2d 1129; 86 A.L.R.2d 467; 142 A.L.R. 746.)

*Zuckerman* v. *Underwriters at Lloyd's, London, supra*, 42 Cal.2d 460, is clearly distinguishable for there the policy itself insured against accidental injury and the court held that death by suicide was the antithesis of accidental death and that the burden was therefore upon the plaintiff to prove death by accident and to negative death by suicide and that the statement in the exclusions of the policy that it did not cover death by suicide did not shift that burden.