[Civ. No. 2872. Fifth Dist. Sept. 6, 1977.]

MICHAEL E. MULLEN, Plaintiff and Appellant, v.
GLENS FALLS INSURANCE COMPANY,
Defendant and Respondent.

## COUNSEL

Kane, Canelo & Walker, Canelo, Walker & Hansen and Charles Rayburn Wilson for Plaintiff and Appellant.

Stammer, McKnight, Barnum & Bailey and James N. Hays for Defendant and Respondent.

## OPINION

**GARGANO, Acting P. J.**—On July 22, 1967, defendant Glens Falls Insurance Company (hereafter Glens Falls) issued a comprehensive personal liability policy to Joe and Dorothy Santos; the policy named the Santoses as the insureds and included, as additional insureds, all residents of their household who were related to, or were under the age of 21 years and in the care of, either of them. It also contained these pertinent provisions: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, *caused by an occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, . . ." (Italics added.)

Immediately under this paragraph was the heading, "Exclusions," followed by language indicating that coverage did not apply to a series of

specified exclusions, including bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile, and bodily injury or property damage arising out of a "business pursuit" of any insured.

On a preceding page, under the caption, "DEFINITIONS," it was explained that: " '[O]ccurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

On October 16, 1969, plaintiff herein, Michael Mullen, filed a civil complaint in the Superior Court of Merced County against Anthony Santos and against Gary Witt and Gary's father, Paul Witt, in order to recover compensatory and punitive damages for personal injuries. The complaint contained four causes of action and was predicated upon negligence and the intentional torts of assault and battery. The first cause of action alleged that Paul Witt and Gary Witt were the owners of a 1955 Chevrolet two-door sedan; that on February 23, 1969, Gary Witt and Anthony Santos "drove, operated, maintained, propelled, controlled and parked" the automobile at a Richfield service station in the City of Merced; and that as a direct and proximate result thereof, plaintiff received certain specified personal injuries when Anthony Santos negligently struck plaintiff's left arm as plaintiff was loading the automobile with gasoline. The second and third causes of action alleged that, at the time of the negligent act described in the first cause of action, Anthony Santos was an employee of Paul and Gary Witt and was acting in the course and scope of his employment. The fourth cause of action alleged that while plaintiff was in the process of loading the Chevrolet automobile with gasoline, he was "intentionally assaulted and struck on the left arm" by Anthony Santos.

On October 22, 1969, insurance agent Georgia Bermingham sent an accident notice to Glens Falls claims adjuster, Rudolf Liebl, with reference to the comprehensive personal liability policy issued by Glens Falls to the Santoses. In dark bold type directly beneath the main heading on the accident notice was the parenthetical notation, "NOT AUTOMOBILE." The notice went on to explain that on February 23 of that year, plaintiff sustained a head injury when he and the Santoses' son, Anthony, "apparently got into a fight at [a] service station and [Anthony] hit the service station attendant with a tire iron." In an accompanying letter, Ms. Bermingham explained that she did not know all of the details

of the accident and that the claims adjuster might be able to learn more of the details from an attorney by the name of Monty Mottram at the law office of C. Ray Robinson. The letter further explained that a civil lawsuit would be forthcoming and requested Mr. Liebl to determine if the comprehensive personal liability policy Glens Falls had issued to Joe and Dorothy Santos provided coverage for their son; at the time of the incident, Anthony Santos was under the age of 21 years and was living with his parents.

On October 28, 1969, Rudolf Liebl, without contacting Attorney Mottram, and solely upon the basis of the accident notice he had received from Georgia Bermingham, notified Joe and Dorothy Santos that the policy did not provide coverage for the incident in question because it did not cover acts "intentionally" caused by an insured. In the meanwhile, a copy of the summons and the complaint in plaintiff's personal injury lawsuit had been served upon Anthony Santos.

On November 20, 1969, Attorney R. W. Levy, who represented Cal-Farm Insurance Company, the insurance carrier for the Witts, called Rudolf Liebl and told him that if Glens Falls did not "pick up" Anthony Santos' defense in the personal injury lawsuit under a reservation of rights agreement, Cal-Farm would do so and in turn would "tender" the defense back to Glens Falls. On the next day, Levy furnished Liebl with a copy of plaintiff's personal injury complaint.

On December 15, 1969, William Snyder, Rudolf Liebl's immediate supervisor, informed Joe and Dorothy Santos that the insurance company was denying coverage and a defense under its policy. On the same day, Snyder wrote to Attorney Levy and told the lawyer that Glens Falls was denying coverage and a defense to Anthony Santos under the comprehensive personal liability policy it had issued to the Santoses because plaintiff's complaint in the personal injury action alleged that his injury was the proximate result of the operation of an automobile and that Anthony Santos was an employee of Paul and Gary Witt and was acting in the course and scope of his employment at the time of the occurrence. Thereupon, the Santoses engaged Attorney John Whiting of the law firm of C. Ray Robinson to represent them, and Cal-Farm Insurance Company obtained a reservation of rights agreement signed by Anthony Santos. When Whiting determined that Cal-Farm could not defend both the Witts and Anthony Santos in the personal injury action, he called William Snyder and inquired as to whether Glens Falls would provide a defense for Anthony Santos; Snyder denied the defense,

stating that the denial was based upon the accident notice the company had received from insurance agent Georgia Bermingham and upon the pleadings on file in plaintiff's personal injury lawsuit. Later, Attorney Whiting filed an answer in that lawsuit on behalf of Anthony Santos. The answer denied the material allegations of the complaint and set up self-defense on the part of the younger Santos as an affirmative defense.

On August 6, 1970, a judgment was entered against Anthony Santos in plaintiff's personal injury lawsuit. The judgment was grounded upon an "intentional assault" on the part of the younger Santos and awarded plaintiff the sum of $16,144 for general damages and the amount of $5,000 for punitive damages, plus costs. Then Anthony Santos assigned to plaintiff all rights he may have had against Glens Falls for the company's refusal to provide him with a defense. On June 28, 1972, plaintiff commenced the present action against Glens Falls for damages for failing to defend Anthony Santos.

On March 9, 1973, plaintiff, by deposition, testified that on the evening of February 23, 1969, he was employed at a service station in the City of Merced when Gary Witt drove a 1955 Chevrolet automobile into the station and asked for 50 cents' worth of gasoline; plaintiff did not see anyone else around. He stated that as he put the nozzle of the hose into the neck of the car's gasoline tank, Anthony Santos struck him with a tire iron across the back between the shoulder blades; plaintiff turned around and he was hit again by Santos with the tire iron; the second blow broke his left arm. Plaintiff testified that when Santos left the premises, Santos said, "I am going to kill you." He also testified that both Gary Witt and Anthony Santos were strangers to him, that shortly before Witt drove the 1955 Chevrolet automobile into the service station, he observed the car drive by with two white male adults inside, that he was unaware that Anthony Santos was behind him until after he was first hit with the tire iron, and that he had no conversation with his attacker.

On November 24, 1975, the cause was submitted to the court for decision on an agreed statement reciting the facts we have summarized and referring to attached exhibits, including a crime report made by the Merced Police Department on the day of the attack; the crime report quoted Santos' remark that he was going to kill plaintiff. From these facts, the court concluded that Glens Falls was not obligated to provide Anthony Santos with a defense and as a consequence had no obligation to pay the whole or any part of the judgment plaintiff obtained against Santos in the personal injury action. This appeal followed.

We commence with the observation that if we were to look only to plaintiff's complaint in his personal injury action against Anthony Santos, we would be tempted to agree with Glens Falls' position that it was not obligated to provide Santos with a defense in that lawsuit; the allegations of the complaint suggest that the operation and use of the Chevrolet automobile owned by Paul and Gary Witt was somehow connected with plaintiff's injuries, and Glens Falls' insurance policy excluded coverage for bodily injury or property damage arising out of the "ownership, maintenance, operation, use, loading or unloading of any automobile." Likewise, if we were to be guided solely by the judgment acquired by plaintiff against Anthony Santos in the personal injury action and by plaintiff's subsequent deposition, we would have no alternative but to declare that the incident of February 23, 1969, was not covered by the insurance policy. According to the deposition, the service station attendant was savagely assaulted by Anthony Santos with a tire iron, without provocation, and the term "occurrence" within the ambit of the coverage provided by the policy does not include bodily injuries or property damage "expected [or] intended from the standpoint of the insured." In addition, insurance coverage for such willful and criminal acts is prohibited by the public policy of this state. (Civ. Code, § 1668; Ins. Code, § 533; *Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394 P.2d 571]; *Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 84 [286 P.2d 816]; *Evans* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 541-542 [122 Cal.Rptr. 680]; *Nuffer* v. *Insurance Co. of North America* (1965) 236 Cal.App.2d 349, 354 [45 Cal.Rptr. 918].)

However, an insurance company must defend any lawsuit brought against its insured which *potentially* seeks damages within the coverage of the policy (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 265 [54 Cal.Rptr. 104, 419 P.2d 168]; *Dillon* v. *Hartford Acc. & Indem. Co.* (1974) 38 Cal.App.3d 335, 339 [113 Cal.Rptr. 396]), and an insurer's duty to defend its insured in such a lawsuit is not merely determined by looking to the language of the complaint filed against the insured or the judgment entered in the injured party's lawsuit. As the California Supreme Court announced in *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 276-277, 278:

"Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its

insured whenever it ascertains facts which give rise to the potential of liability under the policy."

" . . . . . . . . . . . . . . .

"Nor can we accept [the insurer's] argument that the duty to defend dissolves simply because the insured is unsuccessful in his defense and because the injured party recovers on the basis of a finding of the assured's wilful conduct." (See also *Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 570-571 [83 Cal.Rptr. 394, 463 P.2d 746].)

The crucial question is whether Glens Falls was in possession of factual information which gave rise to potential liability under its policy when the company denied Anthony Santos a defense in plaintiff's personal injury action. We have concluded that it did. The insurance company had been notified by insurance agent Georgia Bermingham in a nonautomobile accident notice that plaintiff received a head injury in a fight with Anthony Santos when he was struck by Santos with a tire iron and that she did not have all of the details of the incident. Accordingly, despite the allegations of the complaint in plaintiff's personal injury action which were even somewhat ambiguous on the point of whether the operation and use of an automobile were involved in causing plaintiff's injuries, when Glens Falls denied Anthony Santos a defense it had information in its possession which showed that the operation and use of an automobile had no causal connection with plaintiff's injuries (cf. *Dillon* v. *Hartford Acc. & Ins. Co., supra*, 38 Cal.App.3d 335, 340-343; *Camay Drilling Co.* v. *Travelers Indem. Co.* (1970) 12 Cal.App.3d 237, 240-242 [90 Cal.Rptr. 170]) and that the alleged injuries were the result of a fight; for all the insurance company could have known at that time, plaintiff started the fight and was struck by Santos in self-defense. It is now settled that injuries resulting from acts committed by an insured in self-defense are not "intended" or "expected" within the meaning of those terms as customarily used in an exclusionary clause like the one involved in the present case. (*Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 782-783 [8 Cal.Rptr. 665]; see *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 301-302 [54 Cal.Rptr. 116, 419 P.2d 180]; *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d 263, 273, 277; cf. *Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d 321, 326-327 [43 Cal.Rptr. 542].)[1]

---

[1]Glens Falls also was in error when it denied a defense to Anthony Santos on the grounds that the policy in question excluded coverage for injuries arising out of a

■ To amplify briefly, exceptions and exclusions in an insurance policy are construed liberally in favor of the insured; doubts as to meaning are resolved against the insurer. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].) Thus, when a comprehensive personal liability policy excludes from its coverage injuries and damages that are either "intended" or "excepted," the policy is construed merely to exclude from coverage injuries and damages resulting from acts involving an element of wrongfulness or misconduct, even though the acts otherwise are performed intentionally. (*Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776, 782-783; see *Lowell* v. *Maryland Casualty Co., supra,* 65 Cal.2d 298, 301-302; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 277; *Meyer* v. *Pacific Employers Ins. Co., supra,* 233 Cal.App.2d 321, 326-327; cf. *Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603, 614-616 [29 Cal.Rptr. 586].) It is possible that an act of the insured may carry out his "intention" and also cause unintended harm. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 273; *Meyer* v. *Pacific Employers Ins. Co., supra,* 233 Cal.App.2d 321, 326-327.) Self-defense is an excellent example. (See *Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776, 782-783.) Further, an insured might be able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit willful and intended injury, but engaged only in nonintentional tortious conduct. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 277; see *Davidson* v. *Welch* (1969) 270 Cal.App.2d 220, 235 [75 Cal.Rptr. 676].)

Glens Falls seeks to distinguish the case at bench from *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, on the ground that in *Gray* the Supreme Court resorted to the stringent rules applicable to adhesionary contracts to hold that an insurance company had the duty to defend its insured in a personal injury action brought against the insured for an alleged intentional tort, even though there was a clause in the insurance policy which purportedly excused the insurer from providing a defense

---

business pursuit of an insured and that plaintiff's complaint in the personal injury action alleged that Anthony Santos was an employee of the Witts and was acting in the course and scope of his employment at the time plaintiff sustained his injuries. The possibility that plaintiff might obtain damages unconnected to any business pursuit on the part of Anthony Santos clearly was presented by plaintiff's complaint in the personal injury action; the allegations that Anthony Santos was an employee of the Witts and was acting in the course and scope of his employment during the occurrence were contained only in two of the four causes of action set forth in the complaint, and the complaint also sought damages independent of any allegation suggesting that Anthony Santos was engaged in a business pursuit at the time plaintiff was injured.

in a lawsuit seeking damages for intentional bodily injury. There, the court alluded to the broad language of the provisions setting forth the insurer's obligation to defend to decree that the insured reasonably could expect a defense in the lawsuit though it was predicated upon an intentional tort, and the court held that the insurer could not rely upon the purported limitation in its obligation to defend since the limitation was not conspicuous, plain and clear. Glens Falls argues that it should be able to rely upon the provision in its insurance policy limiting its obligation to defend since the policy not only defined an occurrence for which coverage applied with clarity, but conspicuously stated that the company's duty to defend was limited to such occurrences.

We are not persuaded by this argument. The *Gray* court also posited an insurance company's duty to defend on an alternative ground. The court declared that even if it were assumed that the duty to defend must be tested against actual coverage, provided by the policy, it arises whenever the insurer ". . . ascertains facts which give rise to the potential of liability under the policy." (*Supra,* 65 Cal.2d at pp. 276-277; accord *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 300 [54 Cal.Rptr. 116, 419 P.2d 180].)

Glens Falls next relies upon *Dillon* v. *Hartford Acc. & Indem. Co., supra,* 38 Cal.App.3d 335, for the thesis that an insurance carrier may assume the risk of refusing to provide its insured with a defense whenever it believes that the third party's lawsuit against the insured is based upon an act or occurrence which is not within the coverage of the policy, and that it incurs no liability for doing so unless it is later shown that liability, or potential liability, existed under the policy. It insists that the judgment in plaintiff's personal injury lawsuit and plaintiff's subsequent deposition show that Anthony Santos committed a willful, unprovoked assault and that there never was any potential liability under the policy since Anthony Santos never was acting in self-defense. In *Dillon,* this court stated: "The duty to defend is not without limitation; it extends only to the defense of those actions of the nature and kind covered by the policy. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 275.) If the insurer, after taking into consideration facts gathered from its own investigation or information supplied by the insured, determines that there is no potential liability under the policy, it may refuse to defend the lawsuit; '[t]his it does at its own risk, and if it later develops liability, or potential liability existed under the policy, the company will be held accountable to its insured, or to one who obtained judgment against its insured in the action it refused to defend.' (*State*

*Farm Mut. Auto. Ins. Co.* v. *Flynt* [1971] 17 Cal.App.3d 538, 548 [95 Cal.Rptr. 296].)" (*Supra,* 38 Cal.App.3d at pp. 339-340.)

Glens Falls' reliance upon the *Dillon* opinion is misplaced. In that case, the insurance carrier, before refusing to defend the insured, made a thorough investigation of all the facts and correctly determined from that investigation that as of the time it denied the request for a defense there was no potential liability under its policy. It was in this context that we said the insurer could refuse to defend the lawsuit without subjecting itself to liability unless it later developed that liability or potential liability existed under the policy. (See *State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d 538, 548; cf. *Abbott* v. *Western Nat. Indem. Co.* (1958) 165 Cal.App.2d 302, 305 [331 P.2d 997].)

The inquiry narrows to whether an insurance company can, without having all of the facts before it, refuse to defend an insured in a lawsuit brought against the insured, if at the time the company denies the defense it is aware of some facts indicating potential liability under the policy. Stated in another manner, may an insurance company, without making an investigation of any kind, deny an insured a defense at a time when it has reason to believe that there is potential liability under the insurance policy, and then rely upon the results of the personal injury lawsuit and subsequent factors to prove that there was in reality no potential liability in the first instance? For example, Glens Falls initially denied Anthony Santos a defense without investigating the incident which caused plaintiff's injury despite Ms. Bermingham's notice suggesting potential liability under the policy the company had issued to the Santoses and her statement that she did not know all of the facts surrounding the incident. Later, Glens Falls denied the younger Santos a defense, this time on the ground that plaintiff's complaint alleged that the injury was proximately caused by the operation of an automobile. Yet, at that time, the complaint in the personal injury action was ambiguous on this point, and Glens Falls was aware of Ms. Bermingham's accident notice which clearly stated that it pertained to a nonautomobile accident.

We believe that public policy alone mandates a negative answer to the question; otherwise an insurance carrier could refuse to defend its insured on the slightest provocation and then resort to hindsight for the justification. Furthermore, a contrary holding would force the insured to finance his own investigation and the defense of the lawsuit, and then to seek reimbursement in a second lawsuit against the insurance company.

This, in turn, could not only impose an undue financial burden on persons who have purchased insurance protection, but it could deprive them of the expertise and resources available to insurance carriers in making prompt and competent investigations as to the merits of lawsuits filed against their insureds. We simply reiterate the admonitions of the Supreme Court in *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, that an insurance company ". . . bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy" (at pp. 276-277), and that this duty does not dissolve ". . . simply because the insured is unsuccessful in his defense and because the injured party recovers on the basis of a finding of the assured's wilful conduct" (at p. 278).

The judgment is reversed and the trial court is instructed to take evidence solely on the issue of damages alleged in plaintiff's complaint, including the amount of the judgment in plaintiff's suit against Santos, and the costs, expenses and attorney's fees incurred in defending that lawsuit.

Franson, J., and Hopper, J., concurred.