**George H. GALBRAITH and Rose T. Galbraith, his wife**

v.

**HARTFORD FIRE INSURANCE COMPANY, Appellant.**

**No. 71–1679.**

United States Court of Appeals, Third Circuit.

Argued May 22, 1972.

Decided July 5, 1972.

Manuel H. Greenberg, Cooper, Greenberg, Katzman & Todd, Atlantic City, N. J., for appellant.

John P. Jehl, Camden, N. J., for appellees.

Before STALEY, ALDISERT and HUNTER, Circuit Judges.

---

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This appeal arises from an action instituted by appellees George H. and Rose T. Galbraith to recover under a fire insurance policy issued to them by appellant Hartford Fire Insurance Company ("Hartford") for damage to their home which occurred as a result of a fire on June 21, 1968. Hartford's defense was arson, specifically that George Galbraith was responsible for the setting of the fire and that appellees were therefore precluded from recovery under the terms of the policy.

The jury returned a verdict in the sum of $22,000 in favor of the Galbraiths. Hartford's motions for judgment n. o. v. and, in the alternative, a new trial were both denied. This appeal followed.

Hartford contends, *inter alia*, that it was prejudicial error for the District Court to allow plaintiffs' counsel to question his client, George Galbraith, concerning whether or not criminal charges had been filed against him as a result of the fire. Although defense counsel promptly objected, the Court permitted Galbraith to respond. He stated that no such charges had been filed.

█ In asserting an affirmative defense to a suit brought to compel payment on an insurance policy, New Jersey law is clear that the carrier must prove that the loss falls within the policy's exclusion. Morie v. New Jersey Manufacturers Indemnity Ins. Co., 48 N.J.Super. 70, 76, 137 A.2d 41, 43 (1957); Advance Piece Dye Works, Inc. v. Travelers Indemnity Co., 64 N.J.Super. 405, 411–413, 166 A.2d 173, 176–178 (1960).

Here Hartford's case was grounded on its claim that Galbraith had indeed set fire to his home. In attempting to counter Hartford's charge of arson, referred to in its opening to the jury, Galbraith's counsel asked his client on direct examination:

"Q. Mr. Galbraith, do you have any knowledge of how the fire started, personal knowledge?

"A. No.

"Q. Were you charged with any crime?

"MR. GREENBERG: I object, Your Honor.

"THE WITNESS: No.

"MR. GREENBERG: That's irrelevant and immaterial.

"THE COURT: I think, under the circumstances Mr. Greenberg, of your opening and your allegations, I think it is material and I am going to permit him to answer.

"MR. GREENBERG: I respectfully disagree, Your Honor. This matter is still pending.

"THE COURT: All right, it is still pending, but he is answering the question as of this date. He doesn't know whether he will be charged in the future or whether he won't. In your opening, Mr. Greenberg, you said, 'That the fire was an incendiary fire set by the plaintiff by spreading fuel oil and lighting it' and we all know that's a crime. He is entitled to ask him if he's been charged with it and I so rule.

"BY MR. JEHL:

"Q. Mr. Galbraith, the fire which occurred in June of 1968 and this is now April of 1971, have you been charged with any crime arising from that fire?

"A. No."

During counsel's summation he again referred to the fact that no criminal charges had been filed:

"Now, let's talk a little bit about what we know about what happened, in the context of whether or not you Ladies and Gentlemen are satisfied that they have proven that he burned the house down. Now, what do we know? We know first of all he wasn't charged with any crime. Now arson is a crime. This is now April

of 1971, nearly three years since the fire. There have been no charges brought."

 Although there are no cases squarely on point, New Jersey law indicates clearly that evidence of an accused's acquittal in a criminal proceeding is not admissible in a civil suit arising out of the event which formed the basis of the criminal charge. Mead v. Wiley Methodist Episcopal Church, 23 N.J.Super. 342, 93 A.2d 9 (1952); Miller & Dobrin Furniture Co. v. Camden Fire Ins. Ass'n, 55 N.J.Super. 205, 150 A.2d 276 (1959); Sorbello v. Mangino, 108 N.J.Eq. 292, 155 A. 6 (1931).[1]

The reasoning behind the exclusion of such proffered evidence is readily apparent. An acquittal in a criminal prosecution is not necessarily a judgment of innocence, but merely a negative statement that the quantum of proof necessary for conviction had not been presented.[2]

Similarly, in the context of a civil action for malicious prosecution, New Jersey courts have consistently held that the grand jury's refusal to bring a bill of indictment is, as evidence, only *res inter alios acta* as to the question of whether probable cause existed to bring the complaint. Stein v. Schmitz, 137 N.J.L. 725, 61 A.2d 260 (1968); Shoemaker v. Shoemaker, 11 N.J.Super. 471, 78 A.2d 605 (1951). "The grand jury is not the proper tribunal to try the issues involved in the civil suit, and the issue [raised] by it in refusing to find a bill

is not the real issue . . . presented in the civil action. . . . The general rule is that the record in a criminal proceeding is inadmissible in evidence in a civil suit." Stein v. Schmitz, *supra*, 137 N.J.L. at 727, 61 A.2d at 262, quoting Apgar v. Woolston, 43 N.J.L. 57, 64 (Sup.Ct.1881).

For the same reasons, we conclude in the instant case that Galbraith's testimony and counsel's summation on the point were inadmissible and in the circumstances of this case highly prejudicial to the issue of whether or not Galbraith had in fact committed arson. Certainly, not all laymen are aware of the complexities inherent in a prosecutor's deliberations concerning whether or not to seek a grand jury indictment. When it is analyzed, Galbraith's testimony that he had not been "charged," may have meant a number of things. Perhaps a decision had been reached that definitive proof, "beyond a reasonable doubt" was lacking, or it is certainly possible that the county's investigative procedures had proven inconclusive or, in the alternative, were still underway.[3] Since the statute of limitations had not as yet run a charge may very well have been forthcoming.

 At its most relevant, non-prosecution may have meant that the prosecutor had investigated the facts, considered them and concluded from them that Galbraith had not committed arson. Thus considered, it is apparent that the evidence would have been only an opin-

1. The majority of jurisdictions in the United States have adopted the rule that evidence of a prior acquittal is inadmissible. *E. g.*, Greenberg v. Aetna Insurance Co., 427 Pa. 511, 235 A.2d 576 (1967); Massey v. Meurer, 25 A.D.2d 729, 268 N.Y.S.2d 735 (1968). See cases collected in 18 A.L.R. 1287.

There being no federal authorities that would favor admission of the evidence, we apply the law of evidence as applied in the courts of New Jersey, the forum state. Fed.R.Civ.P. 43(a); Wright v. Wilson, 154 F.2d 616 (3d Cir.), cert. denied, 329 U.S. 743, 67 S.Ct. 50, 91 L.Ed. 640 (1946); 5 Moore's Federal

Practice ¶ 43.02 [4], at 1318 (2d ed. rev. 1969).

2. On the other hand, in New Jersey a conviction is usually admissible in a civil case involving the same issue, question or claim. See, e. g., Rule 63(20) N.J.R. Evid., N.J.Stat.Ann. Cowen, The Admissibility of Criminal Convictions in Subsequent Civil Proceedings, 40 Calif.L.Rev. 25 (1952).

3. It may too have meant that a decision had been made that prosecutorial resources were too scarce to warrant charging Galbraith.

ion which, moreover, would not have been based on personal knowledge. As such, the evidence would be inadmissible under the opinion rule, now codified in N.J.R.Evid. 56, N.J.Stat.Ann., and the rule requiring that a witness have personal knowledge, now codified in N.J.R. Evid. 19, N.J.Stat.Ann.[4] *See* Rogalsky v. Plymouth Homes, Inc., 100 N.J.Super. 501, 242 A.2d 655 (App.Div.), certif. denied, 52 N.J. 167, 244 A.2d 298 (1968); Biro v. Prudential Insurance Co., 110 N.J.Super. 391, 402–406, 265 A.2d 830, 836–838 (App.Div.) (dissenting opinion), rev'd on dissenting opinion below, 57 N.J. 204, 271 A.2d 1 (1970); Snug Harbor Realty Co. v. First National Bank of Toms River, 105 N.J.Super. 572, 253 A.2d 581 (App.Div.), aff'd on opinion below, 54 N.J. 95, 253 A.2d 545 (1969).

The jury was told that no criminal charges had been filed for over a three year period and it is quite reasonable to assume that it may have concluded, solely on the basis of this testimony, that Hartford's defense was specious. Thus the substantial testimony already presented by Hartford concerning Galbraith's connection with the incendiary origin of the fire may have totally evaporated in light of the testimony that the police had not brought charges in the intervening time period.

We think the ends of justice would be best served by submitting this issue to another jury.[5] The judgment of the District Court will be reversed and the case remanded for a new trial.

4. It might be argued, too, that the evidence would be inadmissible as hearsay. But "hearsay" is defined by N.J.R.Evid. 63, N.J.Stat.Ann., in terms of a "statement." Under N.J.R.Evid. 62(1), N.J.Stat.Ann: "Statement" means not only an oral or written expression but also non-verbal conduct of a person intended by him as the substitute for words in expressing the matter stated."

It would not appear that the prosecutor's failure to charge Galbraith could be considered a "statement," and thus it would not be hearsay.

5. As set forth in the quoted testimony in the text, counsel for Hartford, while objecting to the introduction of the testimony, noted that "the matter was still pending." While apparently conceding at oral argument that it may have been improper to have initiated this line of questioning, counsel for Galbraith nevertheless argued that the above parenthetical comment by defense counsel overcame the prejudicial effects of his client's direct testimony. We disagree, especially in light of the additional references in plaintiffs' counsel's summation.