**KELLY'S AUTO PARTS, NO. 1, INC.,**
Plaintiff-Appellant,

v.

**Barry Nicholas BOUGHTON,**
Defendant-Appellee.

**Gene and Hazel ROBERTS,**
Plaintiffs-Appellees,

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellant.**

**YET FOO WONG, d/b/a China Boy Restaurant, Plaintiff-Appellant,**

**Eleanor Chen, Intervening Plaintiff,**

v.

**TRAVELERS INSURANCE COMPANY,**
Defendant-Appellee.

Nos. 85–1530, 85–1785 and 85–1808.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1986.

Decided Jan. 27, 1987.

Susan Tukel (argued), Denenberg, Tuffley & Bocan, Southfield, Mich., for defendant-appellee in No. 85–1530.

Howard E. Gurwin (argued), Farmington Hills, Mich., Richard M. Taubman, Rosenbaum, Bloom, Appel, Meyerson & Gallinsky, P.C., Detroit, Mich., for plaintiff-appellant in No. 85–1530.

Lance R. Mather, Smith, Haughey, Rice & Roegge, Grand Rapids, Mich., Lawrence P. Mulligan (argued), for defendant-appellant in No. 85–1785.

James R. Seastrom (argued), Muskegon, Mich., for plaintiffs-appellees in No. 85–1785.

James W. Metz (argued), Cross, Wrock, Miller & Vieson, Troy, Mich., for plaintiff-appellant in No. 85–1808.

Walter S. Schram (argued), Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins and Ewald, P.C., Southfield, Mich., for defendant-appellee in No. 85–1808.

Before KEITH, MARTIN, and WELLFORD, Circuit Judges.

WELLFORD, Circuit Judge.

This is a consolidation of three cases, each of which presents a similar issue. *Kelly's Auto Parts No. 1, Inc. v. Boughton,* is an appeal from a jury verdict against an insured who had sued under a fire insurance policy. The questions involved are whether the trial court committed reversible error by refusing to admit into evidence testimony that the insured's sole shareholder was not prosecuted for arson, and whether the court committed reversible error by admitting into evidence an unsigned "1982 Michigan Annual Report" purporting to estimate the value of Kelly's inventory.

The question whether, in a civil suit against an insurer for proceeds on a fire insurance contract, it is reversible error to admit evidence that the insured was not prosecuted for arson was presented in *Roberts v. State Farm Fire and Casualty Company.* A second issue was also presented: whether, in a jury instruction applying Michigan law to an insurer's affirmative defense of misrepresentation and concealment of material fact, it is reversible error to instruct that the insurer must prove "actual fraud, including fraudulent intent of the insured."

*Yet Foo Wong v. Travelers Insurance Company,* also involves an insured suing his insurer for proceeds under a fire insurance contract. The case presents two issues: whether the trial court committed reversible error by not allowing the insured to introduce testimony that no arson charges were brought against him, and whether refusing to adopt the insured's

requested jury instruction that fires are presumed to be accidental was reversible error.

For the reasons hereafter stated, we AFFIRM in *Kelly's Auto Parts*, on both issues; we REVERSE on the first issue and AFFIRM on the second issue in *Roberts;* and we AFFIRM the judgment in *Yet Foo Wong.*

# I. ADMISSIBILITY OF EVIDENCE OF NON–PROSECUTION FOR ARSON

## A. *Kelly's Auto Parts, No. 1, Inc. v. Boughton*

On November 15, 1982, a fire damaged Kelly's Auto Parts' building and inventory. Cynthia McCabe, the president and sole stockholder of Kelly's, made a claim under Kelly's insurance policy with Lloyd's of London. Kelly's claimed that it suffered losses totaling $166,563.25; its insurance provided coverage for up to $190,000.00. Boughton, the only named defendant, is apparently an underwriter at Lloyd's. We refer to the defendant as Lloyd's.

After investigating the facts and circumstances surrounding the fire, Lloyd's denied Kelly's claim, alleging that Kelly's, or persons in privity with Kelly's, deliberately set the fire in an attempt to defraud Lloyd's and that Kelly's intentionally and fraudulently overstated its claim. Kelly's brought suit alleging breach of the insurance policy and demanded payment. The trial resulted in a jury verdict for Lloyd's, from which Kelly's appeals.

In support of its arson defense, Lloyd's called several witnesses, including two firefighters and two fire department arson investigators. The firemen testified that there were no signs of forcible entry into the building, that there was a noticeable smell of gasoline in the building, that at least one gas can was found inside the building, that the front door was locked and secured, and that the roof was intact when the fire department arrived. The arson investigators also testified to the use of gasoline in accelerating the fire. They testified that there were three separate fires, that there was no evidence of burglary or forcible entry, and that the fire at Kelly's Auto Parts was deliberately set and was not set by vandals.

Mrs. McCabe admitted on cross-examination that no gasoline was stored in the building. She also testified that when she purchased the business with her ex-husband in April of 1976, the purchase price of $76,000 included goodwill, equipment, fixtures, and inventory. The inventory was valued at $56,000. A previous fire in August of 1981, cause unknown, partially destroyed Kelly's Auto Parts.

Testimony at trial showed that when the November 15, 1982, fire occurred, business operations had been shut down and that Mrs. McCabe had reached an agreement to sell the business to Discount Tire. In preparation for the sale, an inventory was taken, which was introduced in three separate exhibits (one was the original inventory of auto parts taken by Mrs. McCabe; another was the inventory copied for purposes of submission to Discount Tire; and a third was a copy of the inventory verified by Mrs. McCabe and Mr. Senkowski). Kelly's also introduced a letter from Discount Tire, dated November 1, 1982, addressed to Kelly's, in which Discount Tire requested verification of the inventory. The letter reflected Kelly's cost of merchandise to be $104,595.35. The parties agreed on a purchase price of $125,000, including inventory. Due to the fire, the sale was not consummated.

Lloyd's sought to impeach Mrs. McCabe's testimony about the value of the inventory. Hal Lanstra, Lloyd's investigator, testified that Mr. Senkowski (of Discount Tire) told him, shortly before the fire, that Senkowski and McCabe had calculated the inventory to have a value of $69,698.00. Mr. Lanstra's testimony was admitted without objection by plaintiff's counsel. Both Mr. Senkowski and Mrs. McCabe also testified that, for purposes of the sales transaction, they had valued the contents of Kelly's, including inventory *and fixtures*, at approximately $90,000. In its proof of loss, Kelly's valued the fixtures at

about $22,000. To impeach Mrs. McCabe's inventory valuation evidence, Lloyd's also introduced, despite objection, a purported "1982 Michigan Annual Report". The unsigned, unverified, handwritten report reflected an inventory value of $70,000 as of May, 1982. The document was admitted during Mrs. McCabe's cross-examination. It was not established that this report had been filed with the State of Michigan, and it was not certified or verified by signature or other indicia of filing by a representative of Kelly's.

At the time of the fire, according to Mrs. McCabe's testimony, there was an operative Guardian alarm system protecting Kelly's, which system used movement sensors to detect unauthorized entry into the building. On the night of the fire, Guardian did not call Mrs. McCabe to notify her of an unauthorized entry or of a fire on the premises.

Mrs. McCabe testified that her businesses, including the one in controversy, were showing losses for the years 1980 and 1981. She also testified that in 1980 Kelly's had gross sales of $218,498.13, and that in 1981 gross sales fell to $136,792.05.[1] There was no evidence indicating that Kelly's financial condition had improved in 1982. In fact, Mrs. McCabe testified that at the time of the fire Kelly's owed in excess of $10,000 to the federal government for delinquent withholding taxes. Kelly's also owed Michigan National Bank $19,800, and Kelly's creditor list, prepared by Mrs. McCabe's accountant, showed numerous outstanding debts totalling roughly $13,150.00.

The last person in the building on the night of the fire was Mrs. McCabe. She was the only one with keys to Kelly's, and she went inside Kelly's the night before the fire to make sure everything was "secure". Kelly's made a $40,000 claim for the building under the insurance policy. Mrs. McCabe testified that she purchased the building for $9,700 in 1981 and allegedly made $18,000 in repairs to it. Lloyd's offered a real estate appraiser's testimony

that the estimated value of the building was $27,700.

A pretrial motion *in limine* was filed by Lloyd's. The motion sought exclusion of evidence that arson charges were never brought against anyone connected with Kelly's. The motion was granted and Kelly's was not allowed to introduce into evidence that Mrs. McCabe was not prosecuted for arson.

### B.   *Roberts v. State Farm Fire and Casualty Co.*

The house and contents belonging to the Roberts (plaintiffs-appellees) were partially destroyed by fire on February 27, 1982. State Farm (defendant-appellant) insured the house, but refused to pay the claimed loss, taking the position that the plaintiffs either burned their house, or deliberately caused it to be burned. State Farm also alleged that the plaintiffs misrepresented and concealed material facts in presenting their claim and that, therefore, under Michigan law it was not liable under the policy. The case was removed to the federal district court from state court based upon diversity jurisdiction. State Farm appeals from the jury verdict for the plaintiffs of $65,690.00 plus costs and interest.

Before the fire, the plaintiffs were separated; Mrs. Roberts lived in Houston, Texas, and Mr. Roberts in Muskegon, Michigan, where the fire occurred. In the morning on the day of the fire, Mr. Roberts left Michigan for Texas. He did not leave a key with his neighbor, as he usually did. That night, between 11:00 and 11:15 p.m., a neighbor smelled smoke, investigated, and saw flames in the plaintiffs' house. She also saw two teenagers and overheard one say, "Come on, let's get out of here, Rats," just before they ran. Both front doors of the house were unlocked and open.

The fire was found to be due to arson, set in three different places in the house. No one was ever caught or charged with arson due to this fire. The plaintiffs alleged the fire was set by others and of-

---

1. Kelly's suffered a loss of $3,197.93 in 1980, and a net operating loss of $346.19 in 1981.

fered several other prior instances of violence or threats directed against them, including a complaint that their home had been broken into and entered.

State Farm investigated plaintiffs' allegedly poor financial condition (claimed to be the motive for burning the house), and their financial difficulties were brought out at trial. An expert witness was called by the defendant; he testified that the perpetrators may have had a key. Both plaintiffs, by depositions, allegedly made numerous misrepresentations and misstatements about their financial condition, prompting State Farm's misrepresentation and concealment defense.

The trial court allowed, over State Farm's objection, testimony that there was no physical evidence linking Mr. Roberts to the fire, and that he was not charged with the crime of arson. These facts were emphasized both in plaintiffs' opening statement and in closing argument.

### C. *Yet Foo Wong v. Travelers Insurance Co.*

Wong (plaintiff-appellant) owned and operated the China Boy Restaurant in Allen Park, Michigan, from 1957 to 1983. Travelers (defendant-appellee) insured the building and its contents against fire loss and the business against business interruption. The total coverage was $432,500.00. On May 5, 1983, the premises burned, bringing about the controversy involving Travelers' claim of arson.

Travelers asserts that, prior to the fire, Wong's financial condition was extremely poor, gross annual sales had declined 60% from 1976 to 1982, profits were down, Wong's bank account was consistently overdrawn and that he wrote numerous bad checks, and Wong's taxes and debts were seriously delinquent (he failed to pay property taxes altogether in 1982 and he failed to pay state sales and other state taxes totalling $3,700). Finally, Wong's total debts exceeded $300,000 on May 5, 1983. Wong tried unsuccessfully to sell the business in March, 1983. Wong lives within seven houses of the restaurant and was at home the night of the fire.

On the night of the fire, Wong locked-up at 11:00 p.m., had breakfast with employees at another restaurant, and went home. The fire was discovered at 5:11 a.m., and Wong was awakened at home at 5:30 a.m.

The Allen Park, Michigan, police and fire departments investigated the fire. An arson investigator from the Michigan State Police, Sgt. Erickson, investigated and testified at trial. He testified that a gas chromatograph of a carpet section showed that a gasoline-type substance was used. He also testified that the fire was intentionally set in multiple places and that the fire was accelerated by a flammable liquid (probably gasoline). Erickson did not testify that Wong set the fire, but did testify that a key had been provided for the arsonist, or that the arsonist had a key. Lt. Lanctot of the Allen Park Police Department handled the police investigation. He did not testify at trial. It was his job to refer the matter to the prosecutor for arson charges, if any were to be filed.

Before trial, Travelers moved *in limine* to exclude evidence that no criminal charges were filed against Wong arising out of the fire. The district court granted the motion. During the trial, Wong did not dispute the incendiary origin of the fire. His case was that someone unknown was involved.

At the conclusion of the trial, Wong requested the judge to read a jury instruction that fires are presumed to be accidental. The judge refused. Wong now appeals from an adverse verdict.

### 1. CASE AUTHORITIES

The common issue in these cases is whether evidence that criminal arson charges were not brought against an insured is admissible during a civil trial for recovery of insurance proceeds. This issue has been addressed by relatively few reported decisions, but there is recent authority: *American Home Assurance Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321

(3d Cir.1985). There, the insurer filed a declaratory judgment action, tried to a jury, seeking a declaration that it was not liable under its insurance policy with the insured. American Home alleged that the insured "deliberately caused the fire to be set", thereby relieving it of its contractual obligations. *Id.* at 323. The jury rendered a verdict for the insured, from which American Home appealed. The similarity between *American Home* and each of these consolidated cases is readily apparent.

In *American Home,* the court ruled that the admission of testimony that the insured was not prosecuted for arson was reversible error, mandating a new trial:

> The evidence of non-prosecution is of very limited probative value in showing that there was no arson because of the higher burden of persuasion in a criminal case. *Cf.* E. Cleary, McCormick on Evidence 895 (3d ed. 1984). Further, prosecutorial discretion may take into account many other factors not relevant in a civil suit. At best, the evidence of non-prosecution is evidence of an opinion by the prosecutor. The opinion of a layperson, as the prosecutor was in this case, however, is inadmissible if it [is] based on knowledge outside the individual's personal experience. Fed.R.Evid. 602, 701....
>
> The inadmissibility of evidence of non-prosecution also comports with the general rule that evidence of an acquittal in a criminal arson case is inadmissible in a civil arson case.

*American Home,* 753 F.2d at 325 (citations omitted). We believe this case is persuasive authority for not permitting evidence of nonprosecution of an insured for arson to be admitted in a civil trial. This conclusion applies when the evidence is sought to be admitted during a party's case-in-chief as well as to evidence sought to be introduced during cross-examination or in rebuttal.

Assuming without deciding that evidence of non-prosecution, which is otherwise inadmissible, would be admissible as rebuttal, the district court exceeded its permissible discretion in admitting evidence of non-prosecution when the evidence, as here, does not directly rebut the testimony of the fire officials. *United States v. Pantone,* 609 F.2d 675, 681 (3d Cir.1979). The evidence of non-prosecution was highly prejudicial because it went to the principal issue in this case. The admission of this evidence, therefore, was reversible error. *See Galbraith,* 464 F.2d at 228.

*Id.*

*Galbraith v. Hartford Fire Insurance Co.,* 464 F.2d 225 (3d Cir.1972), is another similar case involving a civil controversy about whether an insured was involved in arson prior to making the fire loss claim. In *Galbraith,* the insureds sued to recover on their fire insurance policy. As in the three cases now before us, the insurer defended alleging the insureds were responsible for setting the fire. The jury returned a verdict for the insured, against the insurer, and the Third Circuit reversed, stating:

> The reasoning behind the exclusion of such proffered evidence is readily apparent. An acquittal in a criminal prosecution is not necessarily a judgment of innocence, but merely a negative statement that the quantum of proof necessary for conviction had not been presented.
>
> ... "The general rule is that the record in a criminal proceeding is inadmissible in evidence in a civil suit." ...

For the same reasons, we conclude in the instant case, that Galbraith's testimony and counsel's summation on the point were inadmissible and *in the circumstances of this case highly prejudicial to the issue of whether or not Galbraith had in fact committed arson.* Certainly, not all laymen are aware of the complexities inherent in a prosecutor's deliberations concerning whether or not to seek a grand jury indictment. When it is analyzed, Galbraith's testimony that he had not been "charged," may have meant a number of things. Perhaps a decision had been reached that definitive proof,

"beyond a reasonable doubt" was lacking, or it is certainly possible that the county's investigative procedures had proven inconclusive or, in the alternative, were still underway. Since the statute of limitations had not as yet run a charge may very well have been forthcoming.

At its most relevant, non-prosecution may have meant that the prosecutor had investigated the facts, considered them and concluded from them that Galbraith had not committed arson. Thus considered, it is apparent that the evidence would have been only an opinion which, moreover, would not have been based on personal knowledge. As such, the evidence would be inadmissible under the opinion rule, now codified in N.J.R.Evid. 56, N.J.Stat.Ann., and the rule requiring that a witness have personal knowledge, now codified in N.J.R.Evid. 19, N.J.Stat. Ann.

*Galbraith,* 464 F.2d at 227–28 (footnotes and citations omitted) (emphasis added).

■■■ We find the reasoning in *American Home* and *Galbraith* convincing, and we adopt their rationale. Evidence of non-prosecution for arson is inadmissible, whether during a party's case-in-chief, during cross-examination, or during rebuttal. "As a general rule, evidence that criminal charges were not brought is inadmissible in a civil case arising out of the same events as the criminal charges." *Goffstein v. State Farm Fire & Casualty Co.,* 764 F.2d 522, 524 (8th Cir.1985) (citation omitted). Of course, as a matter of consistency and fairness, the insurer may not admit evidence that criminal arson charges have been brought against the insured.

## 2. CONCLUSIONS

a. *Kelly's Auto Parts No. 1, Inc. v. Boughton*

■■ In *Kelly's,* the trial court granted the insurer's pretrial motion *in limine* to exclude any evidence that the insured was not criminally prosecuted for arson. Kelly's presented several arguments in opposition to this holding. First, Kelly's argues that the evidence of non-prosecution was essential, obviously relevant, and that its probative value far outweighed the prejudice to defendant's case. Kelly's does not demonstrate, however, *why* the evidence is relevant or *why* it outweighs the obvious prejudice to Lloyd's. Even if the evidence were relevant, that relevance is outweighed by the probability that a jury would deem the evidence to be of overriding importance. A jury is unaccustomed to evaluating the differing burdens of proof in criminal and civil cases and is also inexperienced in evaluating reasons why a decision may be made not to prosecute.

Kelly's argues that *Galbraith,* which held such evidence inadmissible, is based solely on New Jersey law and "is clearly not applicable to the instant matter." We disagree. Though *Galbraith* is not controlling authority in this circuit, we believe that the *Galbraith* and *American Home* decisions properly analyzed the issue, which is identical in these cases, and correctly concluded that the evidence was unduly prejudicial and inadmissible. The facts and holdings of *Galbraith* and *American Home* are closely analogous to the circumstances in these cases. We find no basis for distinguishing these cases and we expressly follow the holdings of *Galbraith* and *American Home.*

Kelly's argues next that a Michigan case, *Imperial Kosher Catering, Inc. v. Traveler's Indemnity Co.,* 73 Mich.App. 543, 252 N.W.2d 509 (1977), is authority for admitting this evidence. In *Imperial Kosher,* a trial court granted an insurer-defendant's motion for judgment on the basis that the insured's principal officers were convicted of arson. The court held the civil arson defense was established by the principals' felony convictions: "The arson convictions ... were not used affirmatively as proof of culpability in the trial of a civil action brought against the persons so convicted.... More importantly, it would be a mockery of justice for our legal processes to be used by convicted felons to profit from their crimes." *Imperial Kosher,* 252 N.W.2d at 510 (footnote omitted). We find this case not analogous and not helpful to

Kelly's. None of the plaintiffs have cited *any* authority clearly supporting the admissibility of non-prosecution evidence in the circumstances present in these cases.

Kelly's argues, finally, that its effective cross-examination was unfairly limited by denying it the opportunity to establish that arson charges were brought against Mrs. McCabe. We reject this argument for the reasons stated in *Galbraith* and *American Home*. Evidence that is inadmissible in other contexts does not become admissible merely by being elicited on cross-examination.

Because the trial court properly refused to allow Kelly's to introduce evidence of non-prosecution, we affirm its ruling.

b. *Roberts v. State Farm Fire and Casualty Co.*

There was no dispute about the testimony that no *physical* evidence linked Mr. Roberts to the fire. Rather, the evidence of Mr. Roberts' complicity was entirely circumstantial. Evidence presented by fire department officials or arson experts is undoubtedly admissible as within the witnesses' personal knowledge and expertise. Fed.R.Evid. 602, 702; *see also American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir. 1985) ("We note that the opinions by the fire officials were clearly admissible.").

■ In support of the inadmissibility of evidence that there was no criminal prosecution for arson, State Farm submitted the case authority previously discussed. The plaintiffs cited no authority in favor of the admissibility of this evidence, but argued that jury instructions might cure any claimed prejudice by the defendant.

We conclude, for the reasons indicated and based on persuasive authority, that the evidence that Mr. Roberts was not prosecuted for arson was improperly admitted and that its admission was reversible error. Jury instructions are inadequate, in our view, to cure the inherent prejudice involved.

c. *Yet Foo Wong v. Travelers Insurance Co.*

The trial court granted Travelers' pretrial motion to exclude evidence that no criminal charges were filed against Mr. Wong. Wong attempts to distinguish *Galbraith* on the basis that the evidence was there held inadmissible because a prosecutor had exercised discretion in not bringing charges, while here the prosecutor played no part in the decision. We are not persuaded by Wong's argument. Here, as in *Galbraith* and in *American Home*, there was discretion on the part of those who might bring charges and who, for reasons immaterial to this civil dispute, chose not to prosecute Wong. In *Galbraith*, the prosecutor exercised discretion; in *American Home*, discretion was also exercised by a prosecutor; in the instant case, a police official, Lt. Lanctot, exercised the discretion not to file charges. There is no basis for failing to apply the sound reasoning of *American Home* and *Galbraith* in this case as well as in the others.

■ Wong claims that exclusion of evidence that he was not prosecuted for arson limited his right of cross-examination of the experts who testified for the defendant; he cites *Hayes v. Coleman*, 338 Mich. 371, 61 N.W.2d 634 (1953). *Hayes*, however, holds only that the right "may not be *unduly* restrained," not that "it may not be restrained." *See id.* at 639 (emphasis added). We hold that, in a case of this kind and in conformity with the rules of evidence, including Federal Rule of Evidence 611(b), the right of cross-examination may be properly restrained to omit evidence of no criminal prosecution for arson. We affirm the trial judge's grant of Travelers' pretrial motion excluding evidence of non-prosecution for arson.

## II. OTHER ISSUES

A. *Kelly's Auto Parts No. 1, Inc. v. Boughton*

The decision whether or not to admit evidence is generally left to the trial judge's sound discretion. Fed.R.Evid.

104(a). Reversal of an evidentiary ruling would not be appropriate unless it is shown that a substantial right of a party has been adversely or unfairly affected. Fed.R. Evid. 103(a). The trial court admitted, over Kelly's objection, a 1982 "Michigan Annual Report, Profit Corporation," for Kelly's Auto Parts Number One, Inc. The parties dispute the admissibility of the report. The insurer-defendant appears to recognize that the report is hearsay, but contends it is admissible under the Federal Rule of Evidence 803(6) "Records of regularly conducted activity" exception.[2] The trial court, however, did not expressly state the basis for admitting this report into evidence.

■ We need not decide whether the report was admissible since, even if the report were erroneously admitted[3] (a question we do not decide), any error in its admission was harmless because Kelly's substantial rights were not adversely affected. There was other evidence indicating the value of the inventory at the time to be approximately $70,000.00, as reflected in the record in question. *See Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 307 (5th Cir.1978); *Dilley v. Chesapeake & Ohio Ry.*, 327 F.2d 249, 251 (6th Cir.), *cert. denied*, 379 U.S. 824, 85 S.Ct. 47, 13 L.Ed.2d 34 (1964); *Hannigan v. Sears, Roebuck & Co.*, 410 F.2d 285, 292 (7th Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 17 (1969).

Plaintiff, in any event, did not demonstrate that it was substantially prejudiced. The 1982 report in question was essentially "cumulative on matters shown by other admissible evidence."[4] *Coughlin*, 571 F.2d at 307; *see also Dixon v. International-*

*al Harvester Co.*, 754 F.2d 573, 582 (5th Cir.1985).

We accordingly find no reversible error in the court's ruling.

B. *Roberts v. State Farm Fire and Casualty Co.*

■ For guidance of the trial court with respect to instructing the jury, we consider State Farm's further contention concerning the following instruction:

To find for the defendant, State Farm, on this affirmative defense, you must find by a preponderance of the evidence that it establishes the following: First, that the misrepresentation was material. That is important to the substance of the contract. Second, that it was false. Third, that the insured knew it was false when he made the misrepresentation, or made it recklessly without any knowledge of the truth. And fourth, that the insured made a material representation with the intention that the insurer would act upon it. Proof of actual fraud, including fraudulent intent of the insured is necessary.

State Farm claimed that the plaintiffs misrepresented and concealed material facts about their financial condition and the extent of the loss due to the fire.

At issue is the instruction's final sentence dealing with "proof of actual fraud." State Farm argues that this instruction placed upon it a burden significantly beyond that required by applicable Michigan law, because an undefined term—"fraud" —was injected into the jury's deliberation.

---

**2.** Federal Rule of Civil Procedure 81(c) states that "[t]hese rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal." Similarly, the Federal Rules of Evidence apply: "These rules apply to the United States district courts ... in the actions, cases, and proceedings and to the extent hereinafter set forth.... These rules apply generally to civil actions and proceedings...." Fed.R.Evid. 1101(a), (b).

**3.** We note that plaintiff did not object to the introduction of a similar report for 1981, and

Mrs. McCabe testified that the corporation filed such reports and that her accountant handled these matters. Kelly's attorney could have tested the accuracy of the report by, for example, calling the company accountant.

**4.** There was other evidence tending to show that Kelly's inventory loss claim was overstated. Mr. Lanstra testified, without objection, that the inventory was actually worth $69,698.00, and testimony from both Mr. Senkowski and Mrs. McCabe was that the contents were valued at $90,000 *including the value of fixtures.*

State Farm also notes the error was compounded when the allegedly erroneous instruction was read to the jury the second time. Plaintiffs maintain that the instruction was proper.

Michigan cases cited by the parties differentiate between misrepresentations in the *procurement* of insurance coverage and misrepresentation in the *proof of loss* when making a claim. The case at bar does not involve fraud or misrepresentation in the procurement; rather, it deals with misrepresentations about the Roberts' financial condition and presenting an alleged false proof of loss.

*West v. Farm Bureau Mutual Insurance Co.*, 402 Mich. 67, 259 N.W.2d 556 (1977), dealt with proof of loss in respect to insurance and observed that "the insured must have actually intended to defraud the insurer" for an affirmative defense to defeat the claim. *Id.* at 557 (citing *Campbell v. Great Lakes Insurance Co.*, 228 Mich. 636, 638, 200 N.W. 457 (1924); *et al.*). *West* also pointed out that " '[w]hether misrepresentations or false statements void an insurance policy depends upon the intent to defraud and this is a question of fact for the jury.' " *Id.* (quoting *Bernadich v. Bernadich*, 287 Mich. 137, 144–45, 283 N.W. 5, 8 (1938)). *Rayis v. Shelby Mutual Insurance* Co., 80 Mich.App. 387, 264 N.W.2d 5 (1978), lists the elements reflected in the jury charge at issue.

*Rayis*, though dealing with misrepresentation in the procurement, states that "[f]raudulent procurement has all the normal fraud elements, while fraudulent proof of loss ... does not have justifiable reliance as one of its elements." *Id.* at 7 (citation omitted). Under the *Rayis* rationale, therefore, the question of fraud is a part of the insurer's defense. *See also Campbell v. Great Lakes Insurance Co.*, 228 Mich. 636, 200 N.W. 457, 459 (1924).

We are inclined to the view expressed in *Campbell*: the instruction in question may not be "commended as a model," but it is not clearly erroneous.

### C. *Yet Foo Wong v. Travelers Insurance Co.*

■ Wong requested the court to read a jury instruction that fires are presumed to be accidental. Wong appeals from the trial court's refusal. His argument is that Michigan law raises a rebuttable presumption that fires are accidentally caused; he cites *People v. Lee*, 231 Mich. 607, 204 N.W. 742 (1925), a criminal case involving arson. In *Lee*, the defendant was convicted of setting fire to his barn in order to defraud his insurer. The Michigan Supreme Court said: "On a trial for arson 'if nothing appears but the mere fact that the house was consumed by fire, the presumption' * * * is that the fire was the result of accident, or of some providential cause." *Lee*, 204 N.W. at 744 (citation omitted). *Lee* is not authority for Wong's proposition, because here there was abundant evidence that someone deliberately burned the restaurant. *Lee* involved a different situation where there was *no* evidence of arson. Wong is not entitled to the instruction he requested. No civil case pointed out by Wong holds that such an instruction is appropriate, and we find no error in its omission in this case. *See People v. Dorrikas*, 354 Mich. 303, 92 N.W.2d 305 (1958). We conclude that Wong's rights were not prejudiced with respect to the refusal to submit his requested instruction.

### III.

For the reasons stated, we AFFIRM the district court's decision on both issues in *Kelly's Auto Parts No. 1, Inc. v. Boughton;* we REVERSE and REMAND *Roberts* for retrial; and we AFFIRM the district court's actions on both issues in *Wong*.