**Jackie BROOKS, Appellant**

v.

**Deshawn L. PRICE**

No. 03–4608.

United States Court of Appeals, Third Circuit.

Argued Oct. 4, 2004.

Decided Feb. 14, 2005.

Stephen P. Patrizio, Arnold Dranoff (Argued), Dranoff & Patrizio, Philadelphia, PA, for Appellant.

Before SLOVITER, BECKER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

Appellant Jackie Brooks ("Brooks") brought this civil rights action against Appellee Officer Deshawn L. Price ("Price") in the United States District Court for the District of Delaware seeking damages for eye injuries Brooks suffered when Price sought to detain him. Brooks' appeal challenges several of the District Court's evidentiary rulings as well as a jury instruction. We will affirm.

## I.

On February 25, 2002, Price, a police officer with the New Castle County Police Department, was patrolling a neighborhood in New Castle, Delaware, known to be an open-air drug market when he observed Brooks in a car stopped in the middle of the road. A male pedestrian was leaning in the passenger side window of the car, apparently conversing with Brooks. The pedestrian ran when he saw Price's patrol car, arousing Price's suspicions that the two had been involved in a drug transaction. Consequently, Price followed Brooks when Brooks drove away. After Brooks parked in a nearby driveway, Price approached him and asked for his license, registration and proof of insurance. Brooks was unable to produce any of this documentation or other personal identification. Price instructed Brooks to get out of the car and then conducted a pat-down search.

The precise sequence of events from this point on is in dispute, but at some point Price had Brooks place his hands on the car, lean forward and spread his legs so that Price could pat Brooks down. Price subsequently removed handcuffs from his belt, ostensibly to detain Brooks until Price could confirm his identity and the ownership of the car. Brooks claims that Price then struck him in the eye with the handcuffs without provocation. Price, however, claims that Brooks resisted being handcuffed, attempted to run away, and, when caught, attempted to strike Price. According to Price, he then struck out at Brooks in self-defense. The blow severed Brooks' left eyelid, injured his eyeball, and despite medical attention at the Wills Eye Hospital in Philadelphia later that evening, left Brooks blind in his left eye.

Brooks filed a four-count complaint against Price. In Count I, brought pursuant to 42 U.S.C. § 1983, Brooks alleged that Price violated his rights under the Fourth, Fifth, and Fourteenth Amendments by unreasonably seizing him, using excessive force, and depriving him of his liberty without due process of law. Counts II–IV raised state law claims of assault and battery, infliction of emotional distress, and negligence.

Suit was filed on March 27, 2002, and the Court's initial scheduling order set June 30, 2003, as the discovery cut-off date. An amended scheduling order directed that the parties file initial Federal Rule of Civil Procedure 26(a)(2) disclosures of expert testimony by March 30, 2003, and supplemental disclosures by April 30, 2003.

On June 30th, Brooks provided Price with a one-page report from Ali Hameli, M.D., in which Dr. Hameli stated that he had reviewed seven documents, including medical records, to reach an

opinion, within a reasonable medical probability, that:

a. The severe and extensive injuries of Mr. Brooks' left eye and the resulting permanent blindness was caused by the striking first of Officer Price in combination with the "single teeth on strand" of the open set of handcuffs held in the same hand.

b. The pain experienced by Mr. Brooks from this encounter was severe and extreme, instinctively making the left eye his main concern.

App. Appellant at 81–A. The report contained no other information.

At a pre-trial conference held four and a half months later and four days before trial, the District Court granted the defense motion to exclude Dr. Hameli's testimony because the report did not contain the required disclosures. The District Court also denied Brooks' motions *in limine* to exclude evidence relating to Brooks' heroin use, his criminal record, and the discovery of marijuana in the car he was driving on the day of the incident

At trial, the District Court permitted Price to testify that the police department had conducted a review of his use of force and that he was not thereafter disciplined or advised that he had done anything improper. The jury returned a verdict for Price. This timely appeal followed.[1]

## II.

### A.

Price moved, *in limine*, to exclude Dr. Hameli's testimony because Brooks had failed to provide the information required by Fed.R.Civ.P. 26(a)(2)(B). Brooks insists that the District Court committed reversible error by granting that motion. We do not agree.

Federal Rule of Evidence 702 permits experts to testify at trial if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." Fed.R.Evid. 702. Federal Rule of Civil Procedure 26 governs the procedure for disclosing experts during discovery and the procedure for taking their depositions. Fed.R.Civ.P. 26(a) provides:

(2) Disclosure of Expert Testimony.

(A) ... a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case ..., be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Under Fed.R.Civ.P. 26(b)(4)(A), a party may depose any person who has been identified as an expert, but if a report is re-

---

1. The District Court had jurisdiction under 28 U.S.C. § 1331, Our jurisdiction rests on 28 U.S.C. § 1291.

quired of the expert under the above-quoted provision of Rule 26(a), may not do so until after the report is provided.

Fed.R.Civ.P. 37(c)(1) establishes the sanctions available if a party fails to comply with Rule 26(a)'s requirements:

> A party that without substantial justification fails to disclose information required by Rule 26(a) ..., is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.....

Although Rule 37 " 'is designed to provide a strong inducement for disclosure of Rule 26(a) material,' " it still leaves the trial court with discretion to determine if a party provides substantial justification for their delay or if the delay is harmless. *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir.1995).

Brooks did not file Dr. Hameli's report until the discovery cut-off date, thus depriving Price of the ability to take Dr. Hameli's deposition. When filed, the report did not provide a complete statement of the basis and reasons for his opinions. Nor did it provide the qualifications of the witness, including a list of his publications, his compensation, and previous expert testimony. These deficiencies were not cured over the following four months. While Brooks tendered a curriculum vitae, which did not include publications, compensation, and previous testimony, three days before the pretrial conference and seven days before trial, when the motion to exclude Hameli's testimony was granted at the pretrial conference, all of the other deficiencies remained.

Brooks insists that his failure to comply with Rule 26(a) was substantially justified because: (1) Dr. Hameli was so well known in the legal community that no disclosure of his qualifications was necessary; and (2) counsel could not comply with the rules because of the demands of a capital case he was defending. The District Court clearly did not abuse its discretion in declining to accept either of these excuses as substantial justification.

With respect to the issue of prejudice, Rules 26(a) and (b) recognize that being forced to cross-examine an opposing expert without the benefit of a meaningful opportunity to depose him puts a party at a substantial disadvantage. Rule 26(a) specifies the information necessary to make an opportunity meaningful. Brooks' failure to file any report prior to the discovery cut-off date precluded Price from taking a satisfactory deposition of Dr. Hameli. While Brooks insists that at some time thereafter,[2] he offered to try to arrange a deposition of Dr. Hameli, this misses the point. Price's counsel could not, consistent with Rule 26(b) and his professional obligation to his client, take Hameli's deposition without the information Rule 26(a) required Brooks to provide. Price was not in a position to avoid the prejudice created by the deficiencies in the performance of Brooks' counsel. Neither was the District Court. Providing Brooks with a still further opportunity to cure his default and Price with an opportunity to depose Hameli thereafter would have required postponement of the long scheduled trial. We find no abuse of discretion on the part of the District Court in deciding that the exclusion of testimony from Dr. Hameli was the only reasonable way to avoid the prejudice occasioned by Brooks'

---

**2.** Brooks represented to the District Court that he wrote making this offer on November 30, 2003, but we assume this is a typographical error given that the trial had been completed by that point.

conduct.[3]

**B.**

■ In addition to the District Court's decision to exclude Dr. Hameli's expert testimony, Brooks challenges the District Court's denial of his *in limine* motions to exclude as irrelevant and/or unduly prejudicial: (1) evidence of Brooks' heroin use;[4] (2) evidence that, subsequent to the incident with Price, Brooks was "arrested and charged with [but not convicted of] numerous offenses, including Menacing, Resisting Arrest, Maintaining a Vehicle, and Possession with Intent to Deliver Marijuana," App. Appellant at 33–A; and (3) evidence that after the incident "a search of the car Brooks was driving led to the discovery of 12 bags of marijuana under the driver's seat." App. Appellant at 27–A.

However, even though Brooks did not want evidence of these matters admitted, at trial he testified preemptively on direct examination as to: (1) his heroin use on the day of the incident and to his heroin addition and treatment; (2) his involvement in criminal proceedings arising from the incident; and (3) the marijuana found in the car. His decision to testify about those matters, while perhaps reasonable trial strategy, now bars him from appeal-ing the District Court's rulings on his motions *in limine*. In *Ohler v. United States,* 529 U.S. 753, 755, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000), the United States Supreme Court held that defendant who introduced evidence of a prior conviction in order to preempt prosecution's introduction of that evidence on cross-examination was barred from claiming on appeal that the district court's *in limine* ruling that such evidence was admissible was in error. In light of this precedent, Brooks is barred from challenging the District Court's *in limine* rulings regarding the admissibility of the evidence in question.

**C.**

■ Brooks next appeals the District Court's ruling permitting defense counsel to question Price as to whether he was disciplined by the police department for his conduct on February 25, 2002. On direct examination, Officer Price was asked if the New Castle Police Department investigated his use of force against Brooks. The court permitted the question, and several follow-ups, which were asked and answered as follows:

> Q. Officer Price ... [i]n this particular case that we're here for today, do you know if the New Castle County

---

3. Brooks also argues the District Court abused its discretion because the Dr. Hameli's testimony was crucial to its case. Where the evidence is important or critical, this Court has indicated that it should be excluded only where there is there is some evidence of bad faith, extreme neglect, or willful disregard of a court order. *In re Paoli,* 35 F.3d at 791–92. However, Hameli's testimony was not critical to Brooks' case. As Price notes, Brooks took the deposition of James F. Vander, M.D. who treated Brooks' in the wake of his eye injury and who indicated that he agreed with a "reasonable degree of medical certainty that it was probably a metal object or some object that caused the tear" on Brooks' eyelid and that the pain he suffered would have been

"moderate or severe." App. Appellant at 359–A. Thus, Brooks had access to another expert who could address the issue of what caused Brooks' injury and the severity of that injury.

4. Brooks admitted to being a heroin user and having used heroin on the day of the incident with Price. Price argued that evidence of drug use was relevant to: (1) Brooks' state of mind at the time of the incident; (2) his ability to recall events surrounding the incident; and (3) his ability to convey information to healthcare providers who treated his eye injury. The District Court agreed.

Police investigated your use of force?

A. I'm not sure. I don't believe they did.

Q. You don't believe they investigated it?

A. No.

Q. Did they review it?

. . .

Q. Do you know if your use of force was reviewed by the New Castle County Police Department?

A. Yes.

Q. All right. And do you know what the results of that review were?

A. No.

Q. Were you disciplined for any misconduct associated with this incident?

A. No.

Q. Were you informed by the New Castle County Police that you did anything improper against their policies as a result of this incident?

A. No.

App. Appellant at 340–A–—341–A.

Under Federal Rule of Evidence 401, evidence is relevant only if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Price's testimony that his employer "reviewed" his use of force and did not impose discipline on him is relevant in the context of this case only because it tends to show that his employer believed there had been no use of excessive force, and this made it more likely than it would be without that testimony that no excessive use of force occurred. In short, Price wanted this testimony admitted because if a review had been conducted by his superiors and they thereafter did not impose discipline, verbal or otherwise, the fair inference would be that they concluded no excessive force was used.

Under Federal Rule of Evidence 801(c), "hearsay" is a "statement, other than one made by a declarant while testifying at the trial . . ., offered for the truth of the matter asserted." A "statement" in this context includes "nonverbal conduct of a person, if it is intended by the person as an assertion." Silence or failure to act can be a statement under the rule so long as it was intended by the person as an assertion. 4 *Mueller & Kirkpatrick, Federal Evidence, Second Edition*, §§ 378–9. Thus, for example, it is hearsay when a witness testifies on personal knowledge that another person (*i.e.*, the declarant) was given an opportunity in a prior trial to identify one of the defendants as someone known to him to be a member of the charged conspiracy and failed to do so. The silence of such a declarant after being given the opportunity to see and identify the defendant was held by the Second Circuit in *United States v. Praetorius*, 622 F.2d 1054 (2d Cir.1979), to be "non-verbal conduct of a person . . . intended as an assertion" within the meaning of Rule 801(c).

We conclude that the situation before the District Court in this case was analogous to that presented in *Praetorius*. The failure of Price's superiors to chastise him after conducting a review of his conduct, like the failure of the declarant in *Praetorius* to identify the defendant after having the opportunity to view him in court, was a "statement" under Rule 801(c) that they believed no excessive force had been used. Since it was offered to prove that they so believed and accordingly as tending to show no excessive force was used, it was a hearsay statement and should not have been admitted absent a showing that it came within one of the permitted excep-

tions to the hearsay rule. No such exception has been identified by Price.[5]

Testimony regarding the results of an investigation, in the absence of the investigator, involves all of the risks that give rise to the rule against hearsay evidence and is treated as hearsay (or multiple hearsay) under the Federal Rules of Evidence. Accordingly, such testimony is normally inadmissible unless the requirements of Rule 803(8) are met. Under that rule, "factual findings resulting from an investigation made pursuant to authority granted by law" are admissible "in civil actions and ... against the government in criminal actions" so long as "the sources of information or other circumstances indicate" trustworthiness. The District Court, regarding Price's testimony as non-hearsay, had no occasion to consider the trustworthiness of the investigation conducted by the New Castle Delaware Police Department, and we lack the necessary information to do so. Accordingly, we conclude that an error was committed by the District Court when it admitted this testimony.

This does not end the matter, however. Evidentiary rulings are not reversible error "unless a substantial right of a party is affected." Fed.R.Evid. 103(a). "Under this test, a reviewing court should affirm the District Court despite the error if the reviewing court believes 'that it is *highly probable* that the error did not contribute to the judgment....'" *Renda v. King*, 347 F.3d 550, 556 (3d Cir.2003) (citing *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 924 (3d Cir.1985) (internal citation omitted)). We find it highly probable that the District Court's error did not contribute to the jury verdict in Price's favor.

The information available to the jury about the "review" was quite sparse. Price was unable to say what constituted the "review," other than that he did not believe a formal investigation had been conducted, and he was unaware of whether there were any formal results of whatever "review" was conducted. Moreover, given the fact that the participants in the confrontation were the only eyewitnesses to the critical, disputed facts, it would have been apparent to the jury (1) that it was highly unlikely that Price's superiors had any information that the jury did not have, and (2) that those superiors were called upon to do nothing more than the jury was being asked to do—make a credibility determination between Brooks' account of an unprovoked attack by Price and Price's account of resistance to arrest and a self-defense response.[6] Most importantly, this testimony did not put the jury in any different position than it would have been had the jury not heard it. The jury al-

---

5. If Judge Sloviter were correct in her view that "there is no record basis to conclude that the Police Department's decision not to discipline Price was intended as an assertion," the evidence that he was not admonished would not be relevant to any issue in the case. As we have noted, Price was able to meet the requirements of Rules 401 and 402 only by offering that evidence as an assertion of his superiors reflecting their opinion that he did not use excessive force.

6. In making that credibility determination, the jury had before it not only the parties' testimony, but also the following compelling evidence supporting the inference that Brooks

resisted arrest: (1) testimony that Brooks fled the scene and could not be found by police officers seeking to arrest him; (2) testimony that, after being injured, Brooks went to a New Jersey hospital in order to avoid Delaware authorities; (3) evidence that Brooks gave a false name and address to two different hospitals to avoid the police; and (4) testimony that there was a significant amount of marijuana in Brooks' car. All of this evidence tended to corroborate Price's testimony that Brooks resisted arrest and tended to undermine Brooks' credibility, which was essential to his case.

ready knew from Brooks' own testimony on direct examination what the credibility determination of Price's superiors had been. Brooks gave testimony which advised the jury that the Department had referred his case to the prosecutor for prosecution of Brooks on a resisting arrest charge. Finally, we believe the insignificance of the testimony regarding the "review" is confirmed by the fact that Price's counsel made no reference to it in her closing argument to the jury.

### D.

■ Finally, Brooks asserts that the District Court erred in its response to a question submitted by the jury. During its deliberations, the jury sent a note to the judge, asking for "some clarification on willful or wanton negligence claim." App. Appellee at B–100. Before responding to the jury, the judge informed counsel that he planned on reading the jury "the willful and wanton conduct defined section from the Delaware Superior Court jury instructions, model jury instructions," and sections from two Delaware Superior Court decisions dealing with the definition of wantonness. App. Appellee at B–102. Neither party objected. After hearing those definitions, the jury continued to deliberate and returned a verdict for the defense on all counts.

Brooks contends on appeal that the District Court erred because it did not "clarify that [the willful and wanton] standard did not apply to the Section 1983 claim and explain its limited applicability to the state law claims." Br. Appellant at 34. Brooks purports to be concerned that the jury, after this supplemental instruction, must have believed that the "willful and wanton" standard applied to both the state law and federal § 1983 claims. We find no record basis for this concern. To the contrary,

the record provides ample assurance that there was no such confusion.

The jury instructions were agreed to by both parties and clearly differentiated the claims under Delaware state law and under 42 U.S.C. § 1983. The jury instructions included: (1) a statement that "[o]ne of the plaintiff's claims is brought under 42 U.S.C. § 1983" and a set of instructions regarding the specific requirements necessary to prove a § 1983 claim; (2) a transition statement that "[t]he plaintiff has also made claims under Delaware State law;" and (3) an instruction on the requirements for a claim of willful or wanton negligence. App. Appellee at B–93—97. At the end of the instructions the District Court told the jury again that the "case involves four separate claims by the plaintiff against the defendant. You are instructed that the plaintiff does not have to prove all claims in order to prevail on any one claim. Each claim is to be considered separately. To aid in your deliberations, a special verdict sheet has been prepared" which the court encouraged the jurors to go through in the order the questions were presented. App. Appellee at B–89—90; B–91—92. The special verdict sheet clearly differentiated the four claims.

The jury's note made clear that it sought clarification of a single claim—the "willful or wanton negligence claim"—a claim which the jury knew to be governed by Delaware law. The judge's response made clear in turn that he was addressing only that claim and only Delaware law.

Where a party fails to preserve its objection at trial, this Court's review of the propriety of the jury charge is for plain error and this Court's discretion to review the charge "should be exercised sparingly." *Fashauer v. New Jersey Transit Rail Operations*, 57 F.3d 1269, 1289 (3d Cir. 1995) (internal citations omitted). This Court should reverse only where the error

is "fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and failure to consider the error would result in a miscarriage of justice." Here, we find no error in the District Court's instructions, much less plain error.

## III.

We will affirm the judgment of the District Court.

SLOVITER, Circuit Judge, concurring.

I join all of Judge Stapleton's opinion with the exception of Part II. C. The majority concludes that the police department's decision not to discipline Price for his altercation with Brooks was a nonverbal implied assertion, which constitutes a "statement" under Federal Rule of Evidence 801(a). Thus, according to the majority, the District Court should have excluded this evidence as hearsay under Fed. R.Evid. 801(c). I disagree with the majority's analysis, but not with the result.

Fed.R.Evid. 801(a) is explicit that nonverbal conduct can constitute a "statement," but only "if it is intended by the person as an assertion." The Advisory Committee Notes provide, in pertinent part:

When evidence of conduct is offered on the theory that it is not a statement, and hence not hearsay, a preliminary determination will be required to determine whether an *assertion is intended.* The rule is so worded as to place the burden upon the party claiming that the intention existed; *ambiguous and*

*doubtful cases will be resolved against him and in favor of admissibility.*

Fed.R.Evid. 801 advisory committee's note (emphasis added).

In the present case, there is no record basis to conclude that the police department's decision not to discipline Price was intended as an assertion. Without more guidance, which was Price's burden to produce, it is more likely than not that this decision was merely the culmination of a routine investigation conducted after a violent altercation between a police officer and a citizen. In other words, there is no evidence to support the contention that the police department's decision was an intentional assertion that Price did not use excessive force.

For this reason, the present case is distinguishable from *United States v. Praetorius,* 622 F.2d 1054 (2d Cir.1979), on which the majority relies. In *Praetorius,* the nonverbal conduct, deemed a statement under the definition provided in Fed. R.Evid. 801(a), was a trial witness's failure to identify a particular individual as a member of a conspiracy, although he gave testimony that several other individuals were members of the same conspiracy.[7] This non-identification can logically be considered a "statement" because the context in which it took place. The trial witness was responding to direct questioning regarding the identity of the members of the conspiracy. The present case does not present a similar circumstance.

We do not have much precedent on this issue. However, we commented in an analogous case that a prosecutor's failure to charge a defendant with a crime is not a "statement." *See Galbraith v. Hartford*

---

**7.** Contrary to the majority's suggestion, the *Praetorius* court did not address the issue of whether the declarant's non-identification was hearsay under Fed.R.Evid. 801(c). *See* Maj. Op. at 967. Rather, the court merely borrowed the definition of "statement" from Fed.R.Evid. 801(a) to determine whether to allow evidence of a prior inconsistent statement under Fed.R.Evid. 613(b). *Praetorius,* 622 F.2d at 1065.

*Fire Ins. Co.,* 464 F.2d 225, 228 n. 4 (3d Cir.1972). In *Galbraith,* an action filed by a homeowner to recover under a fire insurance policy, the defendant insurance company defended on the ground that plaintiff had set the fire himself. Plaintiff introduced evidence at trial that he was never charged with any crime. Although we held that the District Court abused its discretion by allowing this testimony because it was highly prejudicial, *id.* at 227, we stated in a footnote that:

> It might be argued, too, that the evidence would be inadmissible as hearsay. But "hearsay" is defined by N.J.R. Evid. 63, N.J. Stat. Ann., in terms of a "statement." Under N.J.R. Evid. 62(1), N.J. Stat. Ann: "Statement' means not only an oral or written expression but also nonverbal conduct of a person intended by him as the substitute for words in expressing the matter stated." It would not appear that the prosecutor's failure to charge Galbraith could be considered a "statement," and thus it would not be hearsay.

*Id.* at 228 n. 4.

Although *Galbraith* interpreted the New Jersey State Rule on hearsay, the relevant provision is essentially the same as that found in the Federal Rules of Evidence. *Compare* N.J.R. Evid. 62(1) (defining "statement" as "not only an oral or written expression but also nonverbal conduct of a person intended by him as the substitute for words in expressing the matter stated."), *with* Fed.R.Evid. 801(a) ("A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.").

It is my opinion that the reasoning in *Galbraith* controls. Price was testifying to an occurrence (or non-occurrence) which was within his own personal knowledge. Therefore his testimony should not be regarded as hearsay, and was admissible.

Accordingly, I need not comment on the majority's harmless error analysis.